# Melbourne & Troy *v.* Louisville & Nashville Railroad Co.

*Action against Railroad Company as Common Carrier, for Lost Goods.*

1. *Liability of railroad company as common carrier; delivery to connecting carrier at destination.*—A railroad company having safely carried goods to their place of destination, where the freight charges were paid by the consignee after inspection of the goods, its liability as a common carrier is terminated, and it is under no obligation to transfer them to another carrier in the city, for ultimate delivery to the consignee at his place of business, unless a valid usage or custom to that effect is proved.

2. *Same; agreement to deliver to connecting carrier.*—An agreement by the railroad company, after the goods have been safely carried to their destination, to transfer them to another carrier, for more convenient ultimate delivery at the consignee's place of business in the city, is *nudum pactum,* and imposes no obligation to do so; yet, if it enters on the performance of such agreement, and performs it so negligently that the goods are thereby lost or injured, as by the failure to give notice to the transferree in pursuance of a custom or usage between them, it is liable for the loss or injury as a bailee without reward.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellants, suing as partners, against the Louisville & Nashville Railroad Company, to recover $150 damages for the loss, or failure to deliver, a car-load of lime, which had been delivered to the defendant at Blount Springs, for transportation to Birmingham, consigned to the plaintiffs. The complaint contained three counts. The first count was against the defendant as a common carrier, claiming damages for the failure to deliver the lime. The second count alleged, that the defendant received the car-load of lime in its yard at Birmingham, "and promised plaintiff, for a reward, to transfer the same to the yard of the Alabama Great Southern Railway Company, to be delivered by said last named company to plaintiffs on its railroad near Twenty-fourth street in said city of Birmingham," but negligently kept it in its own yard until the lime became worthless, and was wholly lost and destroyed. The third count alleged, that the defendant, on the 9th December, 1886, received in its yard at Birmingham one car-load of lime consigned to plaintiff, "and agreed and promised to forward and transfer said car-load of lime to the yard of the Alabama Great Southern Railroad Company, in said city; and defendant's custom and usage was to notify the receiving road of the delivery of said car, and the name of the consignee, and it became and was defendant's duty to give notice to said Alabama Great Southern Railroad Company of said transfer; but defendant, regardless of its said duty, transferred said car-load of lime to the Alabama Great Southern Railroad Company, but did not give to said company notice of said transfer, and to whom said lime belonged and was consigned; and said A. G. S. R. R. Company was thereby unable to deliver the same to the plaintiffs, and the same remained in its yard, and became wholly lost and destroyed." The court sustained a demurrer to the third count, and issue was joined on the others. Two other counts were

[Melbourne & Troy v. Louisville & Nashville R. R. Co.]

added by amendment, the first alleging that the defendant agreed and promised to transfer the car-load of lime to the Alabama Great Southern Railroad Company, so that plaintiffs could receive it, but transferred it so negligently and carelessly, not marking it, nor notifying the agents of the receiving company of the name of the consignees, nor giving them any means of ascertaining the destination of the car, that plaintiffs never received it, and his goods were wholly lost; and the second, that the defendant did not transfer the car within a reasonable time.

On the trial, as appears from the bill of exceptions, one of the plaintiffs testified in their behalf, that four car-loads of lime were consigned to them at Birmingham, from Blount Springs, over the defendant's road, in December, 1886; that the cars arrived safely in Birminghan, and he paid the freight charges, after inspecting the lime and finding it in good condition; that plaintiffs' place of business was on the line of the Alabama Great Southern Railroad Company, and the cars could not be unloaded from the defendant's road without great inconvenience; "that he requested defendant's local freight agent to deliver the cars to the A. G. S. road, for delivery to plaintiff, and said agent promised to do so; that it was usual and customary for the different railroads centering in the city to make such deliveries for their customers or patrons;" also, that three of the cars were delivered on the next day, but the fourth was missing, and was not found until some time in May, 1887, when the lime was spoiled, and he refused to receive it; that he had made diligent search and inquiry for it, among the agents of each company, and in their yards, the defendant's agents asserting that the car had been transferred to the A. G. S.road, and the agents of the latter company denying that they had ever received it; and that the car, when found, had no names or marks on it by which it could be identified as theirs.

The plaintiffs took the deposition of H. W. Mead, who was the local freight agent of the A. G. S. road in December, 1886, and who thus testified: "The car was received by us from the L. & N. road; it was run on our track, and left there, but, as we did not know to whom it belonged, we could not notify the consignee. . . It is always customary among railroads, when a car is transferred from one road to another, for a way-bill to accompany it, containing the number of the car, the description of the contents, and the name of the consignee, and if this bill does not accom-

pany the car, there is no delivery. In this case, no way-bill or slip was received in my office, and no description of the car, or the name of the consignee, was ever given to me, who was the proper officer to whom it must have come. If a way-bill or slip had accompanied the car, we would have delivered it to Mellbourne & Troy within 24 hours." He testified, also, that in Chicago, Cincinnati, and other cities, in which he had been employed on railroads, a similar custom existed; that the A. G. S. road, while he was in its employment, several times called the attention of defendant's agents to their negligence in failing to furnish such slips; and that they had tried to get defendant to take back this particular car, and had run it on defendant's track, because they did not know what to do with it, but defendant always sent it back.

*John Hines*, a witness for the defendant, who was the yard-clerk of the A. G. S. road in December, 1886, testified that the car was received by that company on the 29th December, and was entered by him on his book, which he produced; "that there was no custom existing for the delivering road to notify him of the name of the consignee of cars, and he did not know of any such custom existing here when transferring cars to be delivered in the city; that it is not the custom of railroads in the city for way-bills to accompany cars transferred from one road to another, for delivery to persons in the city." He testified also, on cross-examination, "that it was not his duty or business to be informed of the name of. the consignee of the various cars, but only to keep a record of the number and brand (which meant the initials of the road running the car) of all cars, and the road from which it was received, and to make the entries in his book."

*Cox*, another witness for defendant, who had been in the employment of the defendant for eight years or more, and whose duty it was to transfer cars from its road to other roads, testified that, in transferring cars to other roads for delivery to persons in the city, it was his constant practice to mark the name of the consignee on the car in chalk, though he could not recollect that he had so marked this particular car; also, that it was not the custom, in December, 1886, "to give a way-bill or slip, or other notice of the consignee's name, to the receiving road, when cars in Birmingham, after their arrival, were transferred to other roads on request of the consignees, to be delivered to them in the city; and that this had never been the custom since he had been the defendant's agent."

[Melbourne & Troy v. Louisville & Nashville R. R. Co.]

On this evidence, a jury having been waived, the court rendered judgment for the defendant; and this judgment is here assigned as error, with the ruling on the demurrer to the third count of the complaint.

MOUNTJOY & TOMLINSON, and W. R. HOUGHTON, for appellants.—(1.) The third count was sufficient, and the court erred in sustaining the demurrer to it.—*S. & M. Railroad Co. v. Butts & Foster*, 43 Ala. 385; *A. G. S. Railroad Co. v. Mount Vernon Co*, 84 Ala. 173; Schouler on Bailments, 363, 370; *Steele v. Townsend*, 37 Ala. 247. (2.) On the merits the appellants cite *Steele v. Townsend*, 37 Ala. 247; *Railroad Co. v. Henlein*, 52 Ala. 606; *Railroad Co. v. Little*, 71 Ala. 611; *Railroad Co. v. Johnson*, 597; *King v. Railroad Co.*, 82 Ala. 368; 1 Wait's A. & D. 128.

HEWITT, WALKER & PORTER, *contra.*

McCLELLAN, J.—This is a suit by the appellants, against the Louisville & Nashville Railroad Company, for damages alleged to have been sustained by reason of defendant's failure to deliver a car-load of lime to the Alabama Great Southern Railroad Company, for delivery by the latter company to the plaintiffs, to whom it belonged. Trial was had without jury, and exception reserved to the judgment rendered; which brings before this court the evidence introduced below, and imposes the duty of reviewing the conclusion reached by the City Court, that on the evidence plaintiffs were not entitled to recover.—Acts 1884–5, p. 216.

The car in question had been shipped from Blount Springs, under consignment to plaintiffs at Birmingham. Having arrived at its destination, and notice thereof having been given to plaintiffs, they inspected the contents, ascertained that the lime was in good condition, and paid freight charges. The contract of affreightment was for transportation to defendant's depot—its place of delivery—in Birmingham, and delivery at that point to consignees.

This contract applied to the transaction at the point from which the liability sought to be enforced in this suit is alleged to have accrued, and imposed on the defendant only the duty of affording plaintiffs an opportunity to receive and take away their property. It involved no duty, unless there was a custom or usage to that effect, to deliver the car to the

A. G. S. R. R. Co., for ultimate delivery to plaintiffs. Any arrangement between defendant's agent and the plaintiffs, providing for such intermediate delivery, was beyond the terms of the subsisting contract, and *prima facie* beyond the authority of the agent. To make such agreement on his part binding on the company, a custom, or usage, of such long standing and notoriety as presumptively to have been known to, and adopted by the company itself, must have been shown, of thus delivering cars consigned to parties in the city to other roads centering there, for more convenient final delivery to the consignees. Such usage would have been a part of the contract of carriage, and imposed on the defendant the duty of delivery to another carrier, at the request of the consignee; and from a failure to so deliver would have sprung the liability imputed to the defendant by the complaint here. This usage is not proved. There is some evidence, "that it was customary and usual for railroads centering in Birmingham to make such delivery for their customers and patrons;" but no evidence as to the length of time this custom had existed, nor to the universality of its adoption, or of the frequency of resort to it, or of its notoriety. And on the other hand, there is evidence which denies its existence *in toto*,—*M. & E. Railway Co. v. Kolb*, 73 Ala. 396. In the absence of a custom, authorizing the agent, at the request of the consignee, to undertake, after the car had reached its destination, a delivery of it at another place, and to another party than the consignee, the arrangement between plaintiffs and the agent was nothing more than a personal and gratuitous accommodation on the part of the latter, beyond the terms of his principal's engagement, and incapable of fixing any liability on the company, on account of the negligence of the agent in carrying it out.

The cases relied on by appellants' counsel involved very different facts from this case. Of course, there can be no sort of doubt as to the liability of a carrier, under a contract of affreightment for delivery beyond the terminus of its own line, and necessitating transportation by successive lines, for a failure to make actual and efficient delivery to the next succeeding line; but that was not the case here. *A. G. S. R. R. Co. v. Mt. Vernon Co.*, 84 Ala. 173.

It is equally free from doubt, that the owner of goods shipped—and *prima facie* the consignee is the owner—may change his instructions as to their destination, and substitute a different place of delivery; but this, we apprehend, he must

[Melbourne & Troy v. Louisville & Nashville R. R. Co.]

do during the transit, and not after their destination has been reached, and the terms of the carrier's obligation have been fulfilled.—Hutchinson on Carriers, §§ 337, 394; *London Railway Co. v. Bartlett*, 7 H. & N. 400.

The evidence adduced below disclosed only a gratuitous undertaking of the agent, assumed for the accommodation of the plaintiffs, and without obligatory force so far as the defendant was concerned. The conclusion reached on this evidence was, we think, the only one that it warranted.

But the third count of the complaint set up, that the defendant agreed to transfer, and did transfer the car in question, to the yard of A. G. S. R. R. Co.; and that it was the usage and custom of defendant, in making such transfers, to give notice to the A. G. S. road of the same, the destination of the car, the name of the consignee, &c., to the end that final delivery might be made; that, by reason of such usage and custom, it became and was defendant's duty to give such notice in this instance; that it failed to do so, and that from such failure resulted the inability of the A. G. S. R. R. Co. to deliver the lime to plaintiffs, and its consequent loss. A demurrer was sustained to this count; and this action of the court will work a reversal of the case, if the count was good, as we can not see that plaintiffs had, or could have had, the benefit of the facts it avers under any other count of the complaint.—*Rice v. Drennen*, 75 Ala. 335.

The agreement which the count avers on the part of the defendant, to transfer the car, was without consideration, and therefore not binding. The defendant, its alleged agreement to the contrary notwithstanding, need not have transferred the car at all. But, though it thus appears that there was no obligation on defendant to move the car, it is further averred that it did enter upon the performance of this *nudum pactum*, and that custom and usage imposed on it the duty of discharging this undertaking, once entered upon, in a certain way—that is, by giving the notice above referred to to the A. G. S. R. R. Co.—and that its failure to so discharge this duty occasioned the loss complained of. It is familiar law, that when one undertakes gratuitously to perform some act with respect to the property of another, he is not bound to do it; but, if the act is performed, it must be done with some degree of care, and the mandatory will be held responsible for any injury or loss that may result from a want of due care in the manner of his performance. Story on Bailments, §§ 165, 174, 175.

29

[Ramagnano v. Crook.]

Applying this principle to the averments of the count under consideration, our conclusion is, that the ruling on demurrer was erroneous. Defendant, without the compulsion of a valid contract, undertook to transfer this car. Its custom and usage, as alleged, were to effect such transfer by giving a certain notice to the A. G. S. R. R. Co. The existence of this general custom imposed upon it the duty to give that notice in this instance. The failure to give it evidenced the absence of that care, the use of which would alone absolve defendant from liability, not indeed as a common carrier, but as a bailee without reward.—*Knox v. Rives*, 14 Ala. 249; *Haynie v. Waring*, 29 Ala. 263.

The judgment of the City Court is reversed, and cause remanded.