# International Agricultural Corporation *v.* Southern Railway Co.

*Delay in Delivery of Freight.*

(Decided June 30, 1914.    Rehearing denied July 25, 1914.
66 South. 14.)

1. *Appeal and Error; Review; Presumption; Finding of Court.*— Where the case was tried by the court without a jury, and both competent and incompetent evidence had been admitted, it will be presumed on review by the appellate court that the court considered only the competent evidence; especially where the finding was what it should have been independent of such incompetent evidence.

2. *Carriers; Goods; Initial Carrier; Liability.*—While under section 5546, Code 1907, an initial carrier is liable for damages to a shipment from negligence of the delivering carrier within the contemplation of the shipping contract, yet such carrier is not liable for damages for the negligence of a carrier to whom the shipment has been deliv-

[International Agricultural Corporation v. Southern Railway Co.]

ered under a new contract between shipper and such latter carrier, after the shipment had been carried by the initial carrier to the destination fixed by the original contract.

APPEAL from Lauderdale Circuit Court.

Heard before Hon. C. P. ALMON.

Action by the International Agricultural Corporation against the Southern Railway Company, for damages, for delay in delivering goods, and for injury to the goods. Judgment for defendant and plaintiff appeals. Affirmed.

ASHCRAFT & BRADSHAW, for appellant. The owner of goods shipped may change his instructions as to destination and substitute a different place of delivery.— *Melbourn v. L. & N.,* 88 Ala. 443. The owner may waive delivery at one place and accept it at another.—*L. & N. v. Gilmer,* 89 Ala. 534. The acceptance of a portion of the shipment at a place different from that specified in the contract does not discharge the carrier as to the residue.—*Cox v. Peterson,* 30 Ala. 608. Assent to the terms of the bill of lading is not presumed by its acceptance where there is a prior oral agreement with reference to the shipment.—*L. & N. v. Meyer,* 78 Ala. 597.

C. E. JORDAN and O. KYLE, for appellee. A surety for the duty of another has the right to stand on the very terms of the contract he made.—*Moses Bros. v. A. B. & L. Assn.,* 100 Ala. 465. The bill of lading stands on the same basis as other contracts.—6 Cyc. 420; *T. F. M. Co. v. N. Ala. Ry. Co.,* 128 Ala. 167; *A. G. S. v. Norris,* 167 Ala. 311. The change of destination and delivery somewhere else beyond the point of destination in the bill of lading made a new contract.—5 A. & E. Enc. of Law, 214; 6 Cyc. 468; 2 Hutchinson on Carriers, § 660; 71 Am. Dec. 278; 92 Am. Dec. 142; 15 L.

R. A. (N. S.) 756; *L. & N. v. D. & R.,* 88 Ala. 443; 137 Ala. 446. A suit cannot be maintained on a bill of lading by a stranger to the contract.—*Zimmerman C. Co. v. L. & N.,* 6 Ala. App. 475.

MAYFIELD, J.—This action is by a shipper against the receiving carrier. The complaint declares on a bill of lading issued by the defendant. The shipment was from Florence, Ala., to Lamb's Ferry, on the Tennessee river. The route was from Florence to Decatur, Ala., over the defendant's line of railroad, and thence by independent boat or barge line, on the Tennessee river, to its destination.

The freight was promptly shipped from Florence to Decatur, but there was some delay in delivering to the barge line, but no particular claim for damages is made on account of this delay. While the freight was at Decatur, one Reeder, agent of the plaintiff, who accompanied the shipment, made arrangements with some agents of the barge line to carry the freight on to Locks 1 and 3, on the Tennessee river, which were three to six miles beyond Lamb's Ferry, the destination of the shipment, as shown by the bill of lading which was sued on.

The shipment was fertilizer, and, after it was transferred from defendant's cars to the barge, it was allowed to be without cover and to be exposed to the weather. Here the shipment was rained on and greatly injured, which damage is the basis of the claim for damages here litigated. Some rain fell before the barge reached Lamb's Ferry, but most of the rain fell, and the greater part of the damage accrued, after the shipment left Lamb's Ferry, and while on its way to Locks 1 and 3.

There was no attempt to show the amount of damages on account of the delay in shipping, nor the damages on account of the rain which fell before the ship-

ment reached Lamb's Ferry; the only attempt was to show the total amount of damages.

The case was tried by the court without a jury. The defendant made request for a special finding of the facts; but the court, for some reason, declined to make such special finding, but found generally for the defendant.

The plaintiff made no request for a special finding, and his exception reserved on account of the court's failure to find the facts, as requested by the defendant, was unavailing.

Plaintiff appeals, and assigns upwards of 80 errors. It would be wholly useless for us to consider these various assigned errors, even if all were insisted upon— which, of course, is not the case. There are two questions, in the present state of the record, which, being decided adversely to appellant, require an affirmance, though all the other questions insisted upon by it were decided in its favor.

The action was on a bill of lading, wherein was a written contract to ship from Florence to Lamb's Ferry. After the shipment was carried to the end of defendant's line, plaintiff's agent made an arrangement with the connecting boat line to carry the freight on to Locks 1 and 3, on the Tennessee river, which were beyond the destination mentioned in the bill of lading sued on, and there make delivery of same.

There was no complaint, nor sufficient evidence to show, that the defendant ever consented to this arrangement—either before or after issuance of the bill of lading. There was an attempt on the part of the plaintiff to show that the defendant did consent, but there was an utter failure so to do. There was offered no competent evidence to show that the defendant did so consent; most of that offered the court expressly ruled

[International Agricultural Corporation v. Southern Railway Co.]

out as incompetent; and, as the facts were found by the court and not by a jury, we must presume that the court considered only the competent evidence. And especially is this so when, as here, the finding is in accord with what it should have been if illegal evidence was not considered.

The defendant was clearly not bound by the new arrangement or contract, to carry this freight on to Locks 1 and 3, instead of to Lamb's Ferry, as it had contracted to carry it, and for delivery whereat the law makes it liable, though the loss or damage did occur after the shipment had been delivered by it to a connecting carrier. The boat line may be liable under this new contract but the defendant railroad company, which contracted to carry to Lamb's Ferry only, is not so liable.

If the defendant railroad company had undertaken to carry the freight beyond its destination, even without a contract so to do, or under a nudum pactum, and on account of its negligence in so carrying the shipment beyond its desination the damage had occurred, it would then be liable, as was the barge line, and as the railroad company was held to be, in *Melbourne's Case*, 88 Ala. 443, 6 South. 762, and again, in *Smith's Case*, 132 Ala. 434, 31 South. 481; but the defendant in this case did not undertake or agree to so carry beyond the destination, and declined to do so, and was not a party to the agreement to so carry beyond Lamb's Ferry, and did not attempt to so carry. Hence the rule announced in the above cases does not apply. Mr. Hutchinson states the rule to be that the owner cannot change the destination, and require delivery somewhere else, except upon the basis of a new contract, after the carrier has completed his undertaking and carried the goods to the destination first agreed upon.—2 Hutchinson on Carriers, § 660.

To hold that the initial carrier is bound by the contract which he made with the shipper, and also by all subsequent contracts made between the shipper and all intermediate carriers and the delivering carrier, would be to bankrupt the initial carrier. It is going quite far enough to hold the initial carrier liable for the negligence of the intermediate or delivering carrier, or for the failure of the latter to perform the contract made by the initial or receiving carrier. It is not yet provided by statute that the shipper and the delivering carrier can, by agreement between themselves, bind the receiving carrier by a new contract to which he is not a party, to which he does not consent, and which he does not undertake, but declines, to perform. It is true that section 5546 of our Code requires the initial or receiving carrier to issue a bill of lading, or receipt, to the shipper, and makes such carrier liable to the shipper for the negligence of intermediate or delivering carriers, or for the failure or refusal of such other carriers to perform the contract of shipment; but it does not authorize such other carriers to change that contract of shipment and thereby hold the initial carrier liable either to the shipper or to such other carriers—in other words, does not authorize them to make a contract for the initial carrier. On the contrary, the statute requires that the initial carrier shall make the contract, and that he shall be bound by the contract, though it is to be performed in part by others.

The wisdom and justice of the statute rest upon the fact that, as the receiving carrier is the one with whom the shipper must contract, the former should be liable to the latter.

The statute does not authorize the shipper to contract with the intermediate carrier and thereby bind the latter contrary to the express provisions of the bill of lad-

ing which he requires it to issue, and to the performance of which the statute holds the initial carrier liable, even where the performance is distributed in part to intermediate carriers and to the delivering carrier.

It appearing in this case without dispute that the shipper and the intermediate carrier materially changed the contract of shipment, and that the initial carrier declined to be·bound thereby, no liability was fixed upon the latter by the changed or new contract of shipment.

As there was no claim of, nor attempt to show, any certain amount of damages suffered on account of a failure to promptly deliver to the connecting carrier, when the liability of the defendant ceased because of the change of the contract of shipment to Locks 1 and 3 instead of to Lamb's Ferry, no judgment could be rendered against this defendant in this action, which declared on the bill of lading issued by the defendant and by the terms of which only it was bound. The effect of the agreement between the shipper and the delivering carrier was, in law, to substitute a new and different contract, by the terms of which this defendant was not bound.

For this reason the judgment of the trial court was correct, and must be affirmed, even though we should concede (which we do not) that there were errors in the record, assigned and insisted upon by appellant. The result would and should have been the same if these rulings had been in favor of appellant.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.