(76 South. 309)
FRED HENDERSON & WALTERS v. ATLANTIC COAST LINE RY. CO.
(4 Div. 594.)

(Supreme Court of Alabama. April 5, 1917. Rehearing Denied July 2, 1917.)

1. CARRIERS ⬤⟶177(3) — INITIAL CARRIER — LIABILITY.
 Under bills of lading stipulating for through transportation from points in Alabama to New Orleans, the initial carrier had the responsibility of the entire transportation between the points of origin and destination, in view of the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 595 [Comp. St. 1916, §§ 8604a, 8604aa]) to Interstate Commerce Act Feb. 4, 1887, § 20, c. 104, 24 Stat. 386.
 [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 779–789.]

2. CARRIERS ⬤⟶219(5)—LIABILITY OF INITIAL CARRIER—WHEN TERMINATED.
 The bills of lading contained no stipulations as to point or mode of delivery after arrival at New Orleans. Defendant initial carrier delivered the cattle at the L. & N. Railroad at Montgomery, Ala., by which road they were carried to the terminus at New Orleans. The consignee received two cars of cattle at the L. & N. pens while all the others were delivered over the L. S., a local road, to an adjacent parish, where consignee had its yards and place of business. By custom or course of dealings between consignee and the L. & N. Road consignee had the option of receiving shipments at the L. & N. stockyards or through an intermediate carrier. Held that defendant carrier's liability ended when the shipment arrived at the terminal of the L. & N. Road for delivery, and where plaintiff shipper's failure to prove that the condition of the cattle was produced by defendant or the L. & N. Railroad, the court properly directed a verdict for defendant.
 [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950.]

3. CARRIERS ⬤⟶219(5)—DAMAGE TO CATTLE—CUSTOM.
 Nor could the liability of defendant be extended to cover any loss or damage to the cattle while being transported over line of the L. S., by any custom or course of dealings between the consignee and the L. & N. Railroad, especially where defendant when he accepted the shipment knew nothing of such custom or course of dealing.
 [Ed. Note.—For other cases, see Carriers, Cent. Dig. § 950.]

4. CARRIERS ⬤⟶84—TRANSPORTATION BEYOND DESTINATION—OBLIGATION OF INITIAL CARRIER.
 After the goods have reached their original destination the undertaking of the carrier so far as transportation is concerned is at an end, and any new obligation on its part to deliver at a different point must arise out of a new and different contract.
 [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 277, 290–298.]

Appeal from Circuit Court, Pike County; H. A. Pearce, Judge.

Action by Fred Henderson & Walters against the Atlantic Coast Line Railway Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Plaintiff shipped separately a number of cars of beef cattle from Troy, Ala., and other nearby points, to their selling agent at New Orleans. The bills of lading stipulated for through transportation to New Orleans, but contained no specification as to the point or mode of delivery to the consignee after arrival at New Orleans. Defendant was the receiving carrier, and delivered the several cars in due course to the connecting carrier, the Louisville & Nashville Railroad, at Montgomery, by which road they were carried to its terminus at New Orleans, the final destination of the shipment. The Louisville & Nashville Railroad Company, has its own stock pens at New Orleans for the reception and handling of cattle, while the consignee's stockyards and place of business are not in the city of New Orleans, but in an adjacent parish, seven miles from the Louisville & Nashville terminal. By a custom or course

of dealing between the consignees and the Louisville & Nashville Railroad Company, the consignee had the option of receiving shipments ·of cattle at the Louisville & Nashville stockyards, or through an intermediate local carrier, the Louisiana Southern, which operates a switching service over the spur track between the Louisville & Nashville terminal and the consignee's stockyard. The consignee in this case received two of the cars of cattle at the Louisville & Nashville pens, and all of the others were delivered over the Louisiana Southern. The manager of the consignee company testified that the Louisiana Southern brings the cattle over, but receives the cattle from the Louisville & Nashville, .and further that if cattle are shipped to New ·Orleans without instructions to the Louisville & Nashville, they are delivered at the Crescent City stockyards, where is located the consignee's yards and place of business. He testified, further, that:

"If they do not come from a competitive point, we pay the Louisville & Nashville the switching charges, * * * and if they come from a ·competitive point, there is no switching charges."

The counts of the complaint upon which the trial appears to have been had are in code form, and severally charge that defendant failed to deliver each shipment of cattle in good condition. The evidence shows without dispute that the cattle, when delivered at the Crescent City stockyards, appeared gaunt and drawn, as though they had suffered from want of proper attention and feeding, and had lost in value, an average of over one-fourth a cent per pound. It appears, also, that several of the cars were one head short ·of the bill of lading' requirement, and that several animals were seriously injured by bruises. The evidence shows that these cars were in transit between the shipping point and the consignee's stockyards from 2 to 3 days, or some hours over 2 days, and that cattle in good condition and well fed and watered just before shipment could remain on the cars for 36 hours without injury to their condition, but after that period they become gaunt and drawn. It does not appear how long these cars were in transit before reaching the Louisville & Nashville terminal at New Orleans, nor how much time elapsed between their delivery to the Louisiana Southern and their reception at the consignee's stockyards.

A. G. Seay, of Troy, for appellant. John R. Tyson, of Montgomery, for appellee.

SOMERVILLE, J. This action was brought to recover damages for failure to deliver several cars of cattle in good condition, which were received for transportation by the defendant, at Troy, and other points on its line. The several counts of the complaint were in code form. The defendant interposed the plea of the general issue and a number of special pleas.

Through bills of lading were issued by the defendant at the several points at which the cars of cattle were received for transportation to be delivered to the consignee, New Orleans Live Stock Commission Company, plaintiff's selling agent at New Orleans, La. The cattle were transported over the line of the defendant to Montgomery, Ala., and there in due course delivered to the Louisville & Nashville Railroad Company, which transported them to New Orleans, La., the point of destination designated in the bills of lading. At New Orleans all the cars of cattle except two were delivered by the Louisville & Nashville Railroad Company to the Louisiana Southern, and transported by that road to the consignee's stock pens, which were located at the Crescent City stockyards, which were not in the city of New Orleans, but in an adjoining parish, seven miles from the Louisville & Nashville terminal in that city. Upon the arrival of the cars at the consignee's place of business, the cattle appeared gaunt and drawn, as though they had suffered from improper attention and feeding, and had lost in value an average of one-fourth cent a pound. It further appears that several of the cars, upon arrival at consignee's place of business, were one head short of the number of cattle shown to be contained in them by the bills of lading, and that several of the cattle were seriously injured by bruises. The Louisville & Nashville Railroad Company had at New Orleans its own stock pens for the reception and handling of cattle. By a custom or course of dealing between the consignee and the Louisville & Nashville Railroad Company, the consignee had the option of receiving shipments of cattle at the stock pens of the Louisville & Nashville Railroad Company, or through an intermediate local carrier, the Louisiana Southern, which operated a switching service over a spur track between the Louisville & Nashville terminal and the consignee's stockyards. In this case the consignee received two of the cars of cattle at the pens of the Louisville & Nashville, and drove them to its stockyards. All of the other cattle were delivered over the Louisiana Southern. The manager of the consignee company testified that:

"The Louisiana Southern brings the cattle over, but we received the cattle from the Louisville & Nashville."

And further 'that if the cattle are shipped to New Orleans without instructions to the Louisville & Nashville they are delivered to the Crescent City stockyards, where is located the consignee's yards and place of business. He testified, further, that:

"If they don't come from a competitive point, we pay the Louisville & Nashville the switching charges. * * * If they come from a competitive point, there is no switching charges."

The evidence further shows that these cars were in transit between their respective shipping points, and consignee's stockyards from 2 to 3 days, or some hours over the 2 days,

and that cattle in good condition, and well fed and watered just before shipment could remain on the cars for 36 hours without injury to their condition, but after that period they become gaunt and drawn.

It does not appear from the evidence how long these cars were in transit before reaching the Louisville & Nashville terminal at New Orleans, nor how much time elapsed between their delivery to the Louisiana Southern, and their reception at the consignee's stockyards. On this state of facts, which is undisputed, the trial court, at the written request of defendant, instructed the jury hypothetically to find a verdict for defendant. It cannot be doubted but that the defendant's liability upon the bills of lading issued by it is governed by the Carmack Amendment of section 20 of the Interstate Commerce Act (34 Stat. at L. 595, c. 3591, Comp. Stat. 1916, §§ 8604a, 8604aa).

[1] The bills of lading issued by the defendant, as here, "upon an interstate shipment governs the entire transportation, and thus fixes the obligation of all participating carriers to the extent that the terms of the bill of lading are applicable and valid." In other words, the act of Congress cited above "casts upon the defendant, the initial carrier, the responsibility with respect to the entire transportation." Ga., Fla. & Ala. Ry. Co. v. Blish Milling Co., 241 U. S. 190, 194, 195, 196, 36 Sup. Ct. 541, 544, 60 L. Ed. 951, 952.

While the question as to the responsibility of the initial carrier under the bill of lading is a federal one, "it must be resolved by the application of general principles of the common law." So. Ry. Co. v. Prescott, 240 U. S. 640, 36 Sup. Ct. 473, 60 L. Ed. 840. As said in Adams Express Co. v. Croninger, 226 U. S. 491, 511, 33 Sup. Ct. 148, 154, 57 L. Ed. 314, 322, 44 L. R. A. (N. S.) 257:

"The statutory liability, aside from responsibility for the default of a connecting carrier in the route, is not beyond the liability imposed by the common law as that body of law applicable to carriers has been interpreted by this court as well as many courts of the states."

See, also, Kansas City So. Ry. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, 687.

The manifest object sought to be accomplished by the act of Congress was to prevent the initial carrier from contracting against the obligation of carriage beyond its own line, and thereby making each succeeding carrier in the route the agent of the shipper for a continuance of the transportation.

The obligation imposed by the act does not differ materially from that incurred by a carrier of an interstate shipment, where a through bill of lading was issued for the transportation of the goods. A. C. L. R. R. Co. v. Riverside Mills, 219 U. S. 186, 194, 195, 196, 31 Sup. Ct. 164, 55 L. Ed. 167, 177, 178, 31 L. R. A. (N. S.) 7; note Ann. Cas. 1915B, 83, 84, and cases cited.

[2] It never was the purpose of the act of Congress to make the initial carrier liable for loss or damage sustained or incurred upon any line handling the shipment other than the connecting carrier or carriers handling the shipment en route between the point of origin of shipment and the point of destination. When the shipment, as here, arrived in New Orleans at the terminal of the Louisville & Nashville, and was there ready for delivery, this was a fulfillment of the obligations undertaken and assumed by the defendant under its bills of lading, and it cannot be held responsible for any loss or damage that may have occurred to the cattle after they were delivered by the Louisville & Nashville, to the Louisiana Southern for transportation to the consignee's place of business. The liability of the defendant cannot be extended beyond the contract evidenced by the bill of lading; that is, to deliver the shipments of cattle at New Orleans. Parker-Bell L. Co. v. Great Northern Ry. Co., 69 Wash. 123, 124 Pac. 389, 41 L. R. A. (N. S.) 1064; Internat. Agri. Corp. v. So. Ry. Co., 188 Ala. 354, 66 South. 14.

[3] Nor can the liability of the defendant be extended so as to cover any loss or damage to the cattle while being transported over the line of the Louisiana Southern by any custom or course of dealing between the consignee and the Louisville & Nashville Railroad Company. And certainly this is true where there is no proof, as here, that the defendant, when it accepted the cattle for transportation, knew of such custom or course of dealing between the consignee and the Louisville & Nashville Railroad Company. Melbourne & Troy v. L. & N. R. R. Co., 88 Ala. 443, 6 South. 762.

The effect of the transaction had between the Louisville & Nashville Railroad Company and the consignee was to make a new contract by which the Louisiana Southern was to take the cattle from New Orleans to consignee's stock pens. And in order to bind the defendant for any loss or damage to the cattle while being transported over the line of the Louisiana Southern, it must be shown that it was a party to that contract, and assumed such a liability.

[4] It seems to be well settled that:

"After the goods have reached their original destination, the undertaking of the carrier, so far as transportation is concerned, is at an end, and any new obligation on its part to deliver at a different point must arise out of a new and different contract, which must be entered into on its own behalf by an agent authorized thereto." 5 Am. & Eng. (2d Ed.) 214, 215.

The failure of plaintiff to prove that the condition of the cattle was produced by, or that the missing cattle was the result of some act of commission or omission on the part of, the Louisville & Nashville Railroad Company or the defendant must operate to defeat their right of recovery.

The court committed no error in giving the charge requested by defendant.

It is unnecessary to consider other questions raised.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.