## 11411

### BEAUFORT TRUCK GROWERS ASSOCIATION v. S. A. L. RAILWAY CO.

(121 S. E., 357)

1. CARRIERS—RECEIVING CARRIER HELD NOT "INITIAL CARRIER" FOR EXTENDED TRANSPORTATION UPON RECONSIGNMENT.—Where potatoes were shipped from a point in South Carolina under a straight bill of lading, showing that plaintiff was both consignor and consignee,

Note: On Carmack Amendment as affecting State regulations as to stipulations limiting liability of common carriers for loss of, or damage to, goods, see notes in 41 L. R. A. (N. S.), 1064; 44 L. R. A. (N. S.), 257, and 50 L. R. A. (N. S.), 819.

and the destination was a point in Virginia, *held,* that receiving carrier is not an "initial carrier" under the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), for extended transportation on reconsignment at shipper's direction, in which extended transportation receiving carrier has in no wise participated.

2. CARRIERS—THAT SHIPMENT WAS INTERSTATE HELD NOT TO FIX LIABILITY OF INITIAL CARRIER FOR DAMAGE BY CONNECTING CARRIER.— The fact that the shipment was interstate does not *ipso facto* fix liability of the initial carrier under the Carmack Amendment (U. S. Comp. St. §§ 8604a, 8604aa), for damage caused by a connecting carrier, as the liability of the initial carrier depends upon the extent of its obligation, evidenced by the bill of lading.

3. CARRIERS—RECEIVING CARRIER'S OBLIGATION DEFINED BY BILL OF LADING.—The receiving carrier's obligation is defined by the through bill of lading issued by it, and, to charge it with liability for damage occurring upon an extended transportation after it has fully complied with its undertaking, there must be a contractual basis, express or implied, therefor.

Before SEASE, J., Beaufort, March, 1923. Reversed and remanded.

Action by the Beaufort Truck Growers' Association against Seaboard Air Line Railway Co. Judgment for plaintiff and defendant appeals.

*Messrs. Buist & Buist* and *William J. Thomas,* for appellant, cite: *Prior to the enactment of the Carmack Amendment* (U. S. Comp. St., 8604A, as amended, 41 Stat., 494), *the common carrier was liable under its ordinary contract only for damage occurring on its own line:* 107 U. S., 104; 104 U. S., 146; 36 S. C., 110. *The Carmack Amendment has extended liability to the initial carrier to embrace carriage over its own and connecting lines:* 244 U. S., 383; 159 S. W., 375; 111 N. E., 509; 139 N. W., 743. *Contract with defendant terminated at original destination and direction by defendant to another carrier to ship from there on created new contract:* 111 S. C., 19; 41 L. R. A. (N. S.), 1064; 157 Pac., 1016; 198 Pac., 161; 176 Ill. App., 597; 88 So., 174; 76 So., 309; 254 U. S., 538. *Presumption of damage by terminal carrier:* 119 S. E., 19.

*Mr. George W. Beckett* for respondent.

February 2, 1924.

The opinion of the Court was delivered by Mr. Justice Cothran.

Action for $1,382.70 damages on account of loss and damage to a shipment of potatoes which moved by rail from Lobeco, S. C. (Beaufort County), to Toronto, Canada, over several lines of railroad, but, as the defendant contends, by disconnected movements. The plaintiff recovered a judgment in the Circuit Court for $300, and the defendant has appealed.

The shipment was received by the defendant, Seaboard Air Line Railway Company, at Lobeco on June 3, 1920; the carrier issued and delivered to the plaintiff a bill of lading showing that the plaintiff was both consignor and consignee, and that the destination was Potomac Yards, in the State of Virginia.

The "Case" contains this stipulation:

"The bill of lading under which the shipment in question moved was introduced in evidence, and is to be exhibited to the Court at the hearing of this appeal."

At the hearing the bill of lading was not produced, but by agreement of counsel it was to be produced and submitted to the Court, which has been done.

The bill of lading is, as it is denominated, a "straight bill of lading," in which the plaintiff is both consignor and consignee; the destination is Potomac Yards; there is no notation upon it or any provision in it, tending to show that the shipment was expected or intended to be diverted before it reached destination, or reconsigned afterwards; nor is there any evidence in the record for appeal tending to show that such was the intention of the shipper, or any agreement to that effect binding upon the defendant, the receiving carrier.

Upon receipt of the shipment, the defendant transported it to Richmond, Va., the northern terminus of its line, and

there delivered the car to the Richmond, Fredericksburg & Potomac Railroad, which carried it to Potomac Yards, the destination named in the bill of lading. There is no evidence of damage to the shipment between Lobeco and Potomac Yards.

The complaint alleges that the shipment was made to Potomac Yards, for reconsignment, of which, as has been stated, there is no evidence, and that thereafter (whether while the shipment was in transit or after it had arrived at Potomac Yards, is not stated), the plaintiff reconsigned the car to its order at Buffalo, N. Y., again for reconsignment, and thereafter reconsigned it, freight prepaid, to Toronto, Canada, there to be delivered to Charles Simpson, to whom the plaintiff had sold the potatoes, subject to arrival in good condition. The agreed facts contain this statement:

"From Potomac Yards the shipment was directed to Buffalo, N. Y., upon orders of the plaintiff to the agent of the Pennsylvania Railroad Company at Potomac Yards. From Buffalo the shipment was directed to Toronto, Canada."

The record for appeal is silent upon the movements of the car or shipment from Potomac Yards to Buffalo and from Buffalo to Toronto; that is, whether new bills of lading were issued by the Pennsylvania Railroad at Potomac Yards, and by the unnamed carrier at Buffalo, or whether it moved from Potomac Yards to Toronto upon the original bill of lading issued by the Seaboard Air Line at Lobeco, S. C.

Upon arrival at Toronto, the potatoes were found in a damaged condition, the loss amounting, as alleged, to $1,382.70, to recover which from the original receiving carrier this action was instituted.

The real question in the case is whether or not, under the circumstances stated, the defendant can be deemed the initial carrier for the entire transportation from Lobeco to Toronto, and thereby, under the Carmack Amendment (U.

S. Comp. St., §§ 8604a, 8604aa), be held responsible for the loss and damage occurring between Potomac Yards and Toronto.

The defendant concedes, as a matter of course, that the original shipment was interstate, and that it held itself responsible for any loss, damage or injury that may have been caused by it or by any connecting carrier over whose lines the shipment may have passed, on the through bill of lading —that is, between Lobeco and Potomac Yards; but it denies that it can be deemed the initial carrier for any part of the transportation between Potomac Yards and Toronto, and so be held responsible for loss, damage, or injury, which may have occurred between those points upon the extended transportation.

We are not called upon to decide what would have been the effect of issuing a bill of lading with a notation thereon, "for consignment," or "for diversion"; or of an agreement or custom on the part of the receiving carrier that perishable freight might be shipped to a distributing point and thence reconsigned to other destinations; or of the movement beyond the primary destination upon the original bill of lading pursuant to an implied or express agreement among carriers to that effect; for there is no evidence before us which would justify a deliverance upon these questions, and it will be time enough to consider them when they may be properly presented.

There are several questions in connection with this transaction, interesting if not material, that are unanswered in the record:

(1) Was there an agreement, verbal or otherwise, with the receiving carrier, that the shipment was to be reconsigned at Potomac Yards to other destinations?

(2) Was there a course of dealing between the receiving carrier and the shipper from which such an agreement may have been implied?

(3) Was the freight from Lobeco to Potomac Yards paid by the shipper upon arrival there?

(4) Was the original bill of lading surrendered at Potomac Yards by the shipper?

(5) Did the Pennsylvania Railroad issue a new bill of lading at Potomac Yards covering the transportation to Buffalo?

(6) Was the freight from Potomac Yards to Buffalo, or from Lobeco to Buffalo, paid on arrival of shipment at Buffalo?

(7) Was the original bill of lading, or the bill of lading for the second journey if issued, surrendered by the shipper at Buffalo?

(8) Did the carrier at Buffalo issue a new bill of lading covering the transportation to Toronto?

(9) Did the shipment move all the way from Lobeco to Toronto upon the original bill of lading?

(10) If so, was it done with the knowledge and consent of the receiving carrier by agreement with the connecting carrier at Potomac Yards, or in the course of their dealings from which such agreement might be implied?

(11) Did the shipment move upon a through rate from Lobeco to Toronto, and was the freight paid upon that basis?

(12) Was notice of the reconsignment from Potomac Yards to Buffalo, or from Buffalo to Toronto, given during transit or after arrival?

In the absence of evidence upon these points, there is presented simply a straight shipment from Lobeco, S. C., to Potomac Yards, Va., as to which the receiving carrier has fully performed its obligations, and under the practically unbroken line of authorities such carrier is not considered an initial carrier, under the Carmack Amendment, for extended transportation upon reconsignment at the direction of the shipper, in which extended transportation the receiving carrier has in no wise participated.

The question of the liability of the initial carrier, under the Carmack Amendment, for damage caused by a connecting carrier, is not at all determined by the fact that the particular shipment was interstate. Of course it does not attach unless the shipment was interstate; but the simple fact that it was such, does not *ipso facto* fix liability. For instance, in *Texas Co. v. Sabine Co.*, 227 U. S., 111; 33 Sup. Ct., 229; 57 L. Ed., 442, a shipment of lumber was carried from an inland station in Texas to a gulf port in the same state, under a local bill of lading; it was ordered, manufactured, and shipped for export and consigned to a dealer at the gulf port without direction as to its final destination or the vessel which was to carry it. The Court held that its delay and transshipment at the gulf port did not break the continuity of the transportation from the inland station to the foreign port, its intended final destination, and that, while the transportation must be continuous in order to constitute it interstate, it need not be by or through the initial carrier; a plain intimation in that particular case that, while the railroad company which carried the shipment from the inland station to the gulf port was the initial carrier, it was not at all concerned in the shipment from the gulf port to the foreign port. That case did not involve the question of the initial carrier's liability under the Carmack Amendment, but a strong inference arises from the points concluded that the initial carrier had performed its full duty under the bill of lading by carrying the shipment from the inland station to the gulf port; and that, while the reshipment at the gulf port did not break the continuity of transportation from the inland station to the foreign port, the initial carrier, being no party to the extended transportation, could not be held responsible for losses occurring in such reshipment. In other words, the character of the shipment, whether interstate or intrastate, depends upon the nature of the traffic. while the liability of

the initial carrier depends upon the extent of its obligation evidenced by the bill of lading.

The following authorities conclusively establish the 3 proposition that the receiving carrier's obligation is defined by the through bill of lading issued by it, and that, in order to charge it with liability for damage occurring upon an extended transportation after it has fully complied with its undertaking, there must be a contractual basis, express or implied, therefor: *Pere Marquette Ry. v. French,* 254 U. S., 538; 41 Sup. Ct., 195; 65 L. Ed., 391. *Yazoo R. Co. v. Norman,* 125 Miss., 636; 88 South., 174. *International Corp. v. Railroad Co.,* 188 Ala., 354; 66 South., 14. *Ride v. Oregon R. Co.,* 33 Idaho, 565; 190 Pac., 161. *Barrett v. Railroad Co.,* 29 Idaho, 139; 157 Pac., 1016. *Smith v. Gulf R. Co.,* 177 Mo. App., 269; 164 S. W., 132. *Parker Co. v. Railroad Co.,* 69 Wash., 123; 124 Pac., 389; 41 L. R. A. (N. S.), 1064. *Chicago R. Co. v. Iowa,* 233 U. S., 334; 34 Sup. Ct., 592; 58 L. Ed., 988. *Jennings v. Railroad Co.* (Va.) 119 S. E., 147. *Gulf Co. v. Texas Packing Co.,* 244 U. S., 31; 37 Sup. Ct., 487; 61 L. Ed., 970. *Henderson v. Railroad Co.,* 200 Ala., 393; 76 South., 309; 5 Cyc., 214; 4 R. C. L., 908. *Gamble v. Railroad Co.,* 262 Ill., 400; 104 N. E., 666; Ann. Cas. 1915B, 89.

In *Gulf R. Co. v. Texas,* 204 U. S., 403; 27 Sup. Ct., 360; 51 L. Ed., 540, a shipment moved under a bill of lading issued by the defendant from a point in South Dakota, consigned to Texarkana in the State of Texas. At the latter point it was reconsigned by the consignee to another point in Texas. The question presented was the application of rates, depending upon the character of the shipment between the last two points. The railroad company contended that the shipment from South Dakota to the final destination in Texas was interstate, and that the rate fixed by the State Commission had no application. The State, on the other hand, contended that the shipment from South Dakota to

Texarkana was interstate, but that the shipment from Texarkana to the final destination was local, intrastate. The Supreme Court sustained the contention of the State, saying:

"When the Hardin Company accepted the corn at Texarkana the transportation contracted for ended. The carrier was under no obligations to carry it further. It transferred the corn in obedience to the demands of the owner, to the Texas & Pacific Railway Company, to be delivered by it, under its contract with such owner. Whatever obligations may rest upon the carrier at the terminus of its transportation to deliver to some further carrier, in obedience to the instructions of the owner, it is acting not as carrier, but simply as a forwarder. No new arrangement having been made for transportation, the corn was delivered to the Hardin Company at Texarkana. Whatever may have been the thought or purpose of the Hardin Company in respect to the further disposition of the corn was a matter immaterial so far as the completed transportation was concerned."

The question not presented in the record or discussed in the argument, occurs to us, whether or not, assuming that a single reconsignment might be within the obligation of the original bill of lading, so as to constitute it a part of the through shipment and the receiving carrier the initial carrier as to it, a second, third, fourth, or fifth reconsignment would also be.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for a new trial.

Messrs. Justices Watts, Fraser and Marion concur.

Mr. Chief Justice Gary did not participate.