(101 South. 605)

## ATLANTIC COAST LINE R. CO. v. ENTERPRISE OIL CO. (4 Div. 154.)

(Supreme Court of Alabama. Oct. 16, 1924.)

1. **Evidence** ⊝⇒486—**One having opportunity for forming correct opinion of market value may testify thereto.**

Under Code 1907, § 3960, direct testimony as to market value is in nature of opinion evidence, and one need not be expert or dealer in article, but may testify as to value if he has an opportunity for forming a correct opinion.

2. **Evidence** ⊝⇒474(19)—**Shipper's secretary and treasurer held qualified to give his opinion of market value of peanuts at destination.**

In action against carrier for deterioration of peanuts on account of unreasonable delay, secretary-treasurer of shipper *held* qualified under Code 1907, § 3960, to give his opinion as to market value of peanuts at destination in another state.

3. **Carriers** ⊝⇒105(1)—**General rule as to damages recoverable for delay in transportation stated.**

Where goods shipped have depreciated in market value during delay in shipment, or if they have depreciated in quality because of delay, damage is difference between market value of goods at time and place at which delivery should have been made, and market value when delivery was actually made.

4. **Carriers** ⊝⇒132—**Burden on shipper to show good condition of shipment when delivered to carrier, and contrary condition on arrival at destination.**

Where shipper sued carrier for unreasonable delay in shipment of peanuts, burden was on shipper to show prima facie that peanuts were sound and in good condition when delivered to carrier, and were not in that same sound good condition when delivered at point of destination.

5. **Carriers** ⊝⇒177(3)—**Carrier not party to contract of connecting carrier with consignee held to have terminated its liability where it delivered according to its contract.**

Where initial carrier of shipment to order of shipper, notify B. Co., Green Bay, Wis., was not party to agreement between connecting carrier and B. Co. for delivery of cars to third railroad for placing on B. Co.'s side track, its liability terminated when car reached Green Bay, and B. Co. was notified of its arrival, and it was delivered to such third railroad.

6. **Carriers** ⊝⇒136—**Shipper held not to have discharged burden of proving shipment unsound on arrival at destination, so that affirmative charge was proper.**

Shipper *held* not to have discharged burden of proving unsound condition of shipment on arrival at destination, by proving condition eight days later, so that affirmative charge should have been given.

Appeal from Circuit Court, Coffee County; Arthur E. Gamble, Judge.

Action for damages for delay in transporting freight, by the Enterprise Oil Company against the Atlantic Coast Line Railroad Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Arrington & Arrington, of Montgomery, for appellant.

The measure of damages is the difference between the market value of the goods at the time and place when the goods should have arrived and the value at the time and place of delivery. Defendant was entitled to the affirmative charge. Sou. Ry. v. Northwestern Fruit Co., 210 Ala. 519, 98 So. 382; Am. Ry. Exp. Co. v. Baer, 207 Ala. 355, 92 So. 652; Zimmern v. Sou. Ry., 207 Ala. 169, 92 So. 437; A. C. L. v. Dothan Ins. Agcy., 16 Ala. App. 623, 80 So. 627; L. & N. v. Dickson, 15 Ala. App. 424, 73 So. 750; Pilcher v. C. of G., 155 Ala. 316, 46 So. 765; Hutchinson on Carriers, § 1366; 10 C. J. 309; 4 R. C. L. 389. A witness should be qualified to testify as to market value. 3 Chamberlayne on Evi. §§ 2099, 2792.

Fleming & Yarbrough, of Enterprise, for appellee.

It was not necessary that the witness be qualified to give evidence of market value. 22 C. J. 580; Chamberlayne on Evi. § 744; Ellis v. Casey & Co., 4 Ala. App. 518, 58 So. 724. When it is shown that goods were delivered to the carrier in good condition, and delivered to consignee in bad condition, a prima facie case is made. A. C. L. v. J. W. Maddox & Co., 210 Ala. 444, 98 So. 276.

MILLER, J. This is an action by the Enterprise Oil Company, a corporation, against

---

⊝⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the Atlantic Coast Line Railroad Company, a corporation, for damages as common carrier for unreasonable delay in the shipment of a car of shelled peanuts, sacked, from Enterprise, Ala., to Green Bay, Wis. There was judgment for plaintiff, on verdict of a jury, from which the defendant appeals.

There were two counts in the complaint. Only one was submitted to the jury, being count 2. The plaintiff by this count claims damages of the defendant for that on July 15, 1920, plaintiff delivered to the defendant 250 bags of shelled peanuts for shipment to the order of the plaintiff, notification to Johannes Bros. Company, Green Bay, Wis., which the defendant accepted, the freight thereon to be collected at the point of destination. Plaintiff avers that defendant failed to deliver the said shipment within a reasonable time, resulting in a loss to the plaintiff in the amount sued for. The defendant pleaded to it the general issue.

The evidence for the plaintiff tended to show that on July 15, 1920, it delivered to the defendant 250 sacks of peanuts, shelled, 100 pounds in each sack, at Enterprise, Ala., to be shipped by the defendant to plaintiff, order notify Johannes Bros. Company, at Green Bay, Wis. They were number one Georgia Runner peanuts, all sound, in good condition, when delivered to the defendant. The plaintiff had sold these peanuts prior to their delivery to defendant to Johannes Bros. Company subject to inspection at 9 cents per pound, plus freight charges from Enterprise, Ala., to Green Bay, Wis.; they were sold for confectionery purposes. The peanuts were examined at the plant of Johannes Bros. Company on August 11, 1920, and found to be wormy, unfit for human consumption, and they refused to accept them. The usual length of time for freight to go from Enterprise, Ala., to Green Bay, Wis., is from 8 to 10 days, not over ten days, and that two weeks would be ample time.

[1, 2] C. Y. Sawyer was permitted by the court, over objection and exception of the defendant, to testify that the market value of Georgia Runner peanuts, sound, number one, shelled, during that period was 9 cents per pound at Enterprise, Ala., and the market value at Green Bay, Wis., at that time was 9 cents per pound plus freight from Enterprise, Ala., and the value of these peanuts, unsound and wormy at Green Bay, Wis., was at that time "about 3 cents per pound." The witness during that time was secretary and treasurer of the plaintiff at Enterprise, Ala., a part of its business was buying, shelling, and shipping peanuts to different places; its "shipping territory included any place where it could sell a car of peanuts." He testified, "I know the market value of peanuts up there plus the freight to Enterprise;" "that he did not know the extent to which the peanuts were wormy." He

was never in Green Bay, Wis., did not hear what anybody said the market value was on that day, and never got any quotation of the market value of that day in Green Bay. There was evidence that plaintiff, just prior to the time these peanuts were shipped, sold them to Johannes Bros. Company at Green Bay, Wis., at 9 cents per pound, plus freight charges from Enterprise, Ala., subject to inspection.

[3] Under our statute section 3960, Code 1907, direct testimony as to the market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value if he has an opportunity for forming a correct opinion. The business, employment, and surroundings of the witness gave him sufficient opportunity for knowing the market value of these peanuts at Green Bay, Wis., for him to give his opinion thereon. He said he knew the market value up there. The defendant had the right to cross-examine him, and the court did not err in these rulings. West. Ry. of Ala. v. Price, 192 Ala. 430, 68 So. 278; S. & N. Ala. R. Co. v. Wood, 72 Ala. 451; and section 3960, Code 1907. This evidence was material and relevant. The general rule for computing damages for unreasonable delay in the transportation and delivery of goods is thus stated in section 1366 of 3 Hutchinson on Carriers (3d Ed.):

"The general rule by which the damages are to be computed if goods of the particular kind have fallen in market value during the delay, or if they have depreciated in quality because of the delay, is the difference between the market value when the goods should have arrived and the value at the time of their delivery; the carrier being liable to the extent of the depreciation."

And in 2 Hutchinson on Carriers (3d Ed.) p. 717, it is stated in this way:

"If by the unreasonable delay they have deteriorated or their market value has fallen or they arrived too late for the market, he may hold him liable for the damages."

This court, in Southern Ry. Co. v. Moody, 169 Ala. 294, 53 So. 1016, refers to the foregoing authority and states:

"Its only liability is for damages caused by the deterioration in value of the goods themselves during the time of delay."

See, also, Cent. of Ga. v. Montmollen, 145 Ala. 468, 39 So. 820, 117 Am. St. Rep. 58, and Southern Ry. v. Langley, 184 Ala. 524, 63 So. 545.

The measure of damages for unreasonable delay in the delivery of goods is generally thus stated: "If the goods have fallen in market value during the delay, or if they have depreciated in quality because of delay," then the damage is "the difference between the market value of the goods at the

time and place at which delivery should have been made and their market value when delivery was actually made." There are exceptions to this rule. Am. Ry. Express v. Bear, 207 Ala. 355, 92 So. 652; Southern Ry. v. N. W. Fruit Exch., 210 Ala. 519, 98 So. 382.

[4] The defendant requested the court to give the general affirmative charge, with hypothesis, in its favor, which was in writing. The court refused it.

There is no evidence that these peanuts, as to kind and grade, depreciated in their market value between the time received by the defendant and the time of delivery at the point of destination. During that time from the evidence their market value at Green Bay, Wis., was 9 cents per pound plus freight from Enterprise, Ala. There was no damage from the delay, if any, to the plaintiff in their market value, as there was no depreciation in their price during the time. Was there any damage to the peanuts by a depreciation in their quality because of unreasonable delay, if any, in their delivery? The burden of proof was on the plaintiff to show, prima facie, that the peanuts were sound and in good condition when delivered to the defendant for transportation. It met this burden by proof, and the burden was on the plaintiff to prove, prima facie, at least that they were not in that same sound, good condition when delivered at point of destination, Green Bay, Wis., to Johannes Bros. Company, for plaintiff as contracted. Did the plaintiff by proof meet this burden? A. C. L. R. Co. v. Maddox, 210 Ala. 444, 98 So. 276; Southern Ry. Co. v. N. W. Fruit Exch., 210 Ala. 517, 98 So. 382.

[5] The peanuts were delivered by the plaintiff to the defendant on or about July 15, 1920, at Enterprise, Ala. They left there on the morning of July 16, 1920, and they were number one Georgia Runners and "in good condition for that year," and there was evidence "they were all sound and in good condition" when delivered to the defendant. They were consigned to plaintiff, "order notify Johannes Bros. Company, Green Bay, Wis."

The undisputed evidence shows this car of peanuts reached Green Bay on the night of August 1, 1920, over the Chicago & Northwestern Railway, a connecting carrier of the defendant. On August 2, 1920, this carrier by agent notified Johannes Bros. Company of the arrival of this car of peanuts, consigned to them, from Enterprise, Ala., and that it was ready for delivery to them, and they instructed the Chicago & Northwestern Railway to deliver the car to the Chicago, Milwaukee & St. Paul Railway for them, on which line was located the warehouse of the Johannes Bros. Company. The peanuts were not then inspected and examined. The car was placed on the sidetrack of Johannes Bros. Company by the Chicago, Milwaukee & St. Paul Railway, and it was inspected on August 11, 1920, and at that time "they were wormy and unfit for human consumption," and "they were refused by Johannes Bros. Company, because of their damaged condition." Johannes Bros. Company, prior to the arrival of this car of peanuts, had instructed the Chicago & Northwestern Railway to deliver all cars consigned to them arriving on its road to the Chicago, Milwaukee & St. Paul Railway, on which line was located the warehouse of Johannes Bros. Company.

There is no evidence that this defendant knew of or had any connection with the arrangement of the Johannes Bros. Company with the Chicago & Northwestern Railway to deliver its cars or this car to the Chicago, Milwaukee & St. Paul Railway for them. This was a new contract, and it is not shown that this defendant was a party to it. Its liability terminated when the car reached Green Bay, Wis., and Johannes Bros. Company was notified of its arrival, and under their instructions it was delivered to the Chicago, Milwaukee & St. Paul Railway on August 3, 1920. Henderson v. A. C. L., 200 Ala. 393, 76 So. 309.

[6] The burden rested on plaintiff to show, prima facie, at least, that the peanuts were then on August 3, 1920, when delivered, not in the condition in which they were received by the defendant on July 15, 1920. It failed to meet this burden. Plaintiff proves "they were wormy and unfit for human consumption" on August 11, 1920; but there is no evidence as to their condition on August 3, 1920, when defendant's liability terminated. There is nothing in the evidence to indicate how long the peanuts were wormy or when they became wormy. On the eighth day after defendant's liability ceased they were wormy and unfit for human consumption, but from this evidence alone the jury could not reasonably infer "they were wormy and unfit for human consumption" on August 3, 1920, at the time of delivery. The plaintiff failed to prove the condition of the peanuts, that the peanuts were wormy and unfit for human consumption on August 3, 1920, when defendant delivered them; the plaintiff failed to prove the condition of the peanuts was proximately caused by any act of omission or commission of the defendant, and the general affirmative charge with hypothesis in favor of the defendant should have been given by the court. Henderson v. A. C. L., 200 Ala. 393, 76 So. 309, and authorities supra.

For the error mentioned, the judgment is reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.