**Illinois Central R. R. Co. v. A. C. Seitz.**

105    89
s111   243

1. Contracts—*Carrier Has No Right to Change Freight Rate After Shipping Contract is Made.*—After goods are received by a carrier, the freight rate given and the contract closed, the carrier can not re-classify the goods and change the rate, in the absence of fraud by the shipper.

2. Evidence—*Of Value of Goods Should be Given Independently of Memorandum.*—Evidence of the value of goods should be the individual opinions of the witnesses and should not be repetitions of the valuation contained upon a paper they have examined.

Trover.—Appeal from the Circuit Court of Christian County; the Hon. William M. Farmer, Judge presiding. Heard in this court at the May term, 1902. Reversed and remanded. Opinion filed November 1, 1902.

James M. Taylor, attorney for appellant; John G. Drennan, of counsel.

Hogan & Drennan, attorneys for appellee.

Mr. Presiding Justice Wright delivered the opinion of the court.

Appellee caused to be shipped by appellant, in the name of Kendal, from Chicago to Pana, Illinois, groceries, counters, shelving, and one horse, harness and wagon. The freight demanded at Chicago for the shipment in one car load was $28, which was there paid. Upon the arrival of the car at Pana, appellant demanded $45.18 additional freight, which appellee refused to pay, and brought this suit in trover for the value of the property. By a jury trial he recovered $1,237, and the court, after having overruled appellant's motion for a new trial, gave judgment against it for that sum, to reverse which it prosecutes this appeal, insisting chiefly, for such purpose, that the court admitted improper evidence, gave wrong instructions, the verdict is against the law and the evidence, and the damages are excessive.

The facts are simple, and contain but little variety. Appellee owned the goods and sent Kendal to get the car

and arrange for the freight rate. Appellee had before that time inquired for rates of shipment in single car lots, but received no definite information; the person to whom he applied told him it might be from $25 to $35. The car was furnished at Kendal's request, and loaded with the goods by appellee and Kendal, and the classification for the freight was made by a clerk in appellant's office. Whether this classification was made upon the representation of Seitz and Kendal concerning the kind of goods shipped or not, was a disputed fact. There was no effort to conceal the property when it was being loaded into the car, and it is fair to infer, if not directly proved, appellant knew the character of it. It is admitted that a part of the property would classify as emigrant movables, and that classification was in fact attached to all of it, by appellant's clerk, and the rate of freight thereby fixed at the seventh class, amounting to $28, and the shipping receipt delivered accordingly, including a receipt for $28, the freight which was then paid. After this an inspector of the Western Railway and Inspection Bureau inspected the freight in the car, and there changed its character upon the duplicate shipping bill, from emigrant movables to groceries, whereby the freight rate was raised to the first class, adding $45.18 to the amount already paid. This was done without notice to either appellee or Kendal. The inspector was not in the employ of appellant, but appellant having adopted his act, thereby ratified it, and made him its agent. We are not impressed by the insistence of counsel that appellee or Kendal so misrepresented the character of the goods that it can now claim it is not bound by the contract it in fact made. There was no fraud in all that occurred. The property was open to inspection, and it can not be reasonably presumed that a common carrier is ignorant of the nature of the property delivered to it for shipment. Such presumption would be inconsistent with the care required by law to be bestowed upon it. It was no part of the appellee's duty to classify the property for freight purposes; this was the province of appellant, and if through the care-

lessness of its clerk a mistake was made, without the fault of appellee, and upon that basis it made its contract, as we think it did, to ship the property to Pana for $28, it was bound to do so. The consideration was a valuable one, and of appellant's own making. It proposed to appellee to ship the property for a stipulated rate, described or characterized the property of its own volition as emigrant movables, and appellee accepted the proposition. Like an individual, appellant must be held to perform its contracts, fairly entered into, as we think this one was. It is also argued that appellee can not maintain the suit for the reason that the shipping bill was in the name of Kendal, as it was, and until Kendal indorsed it to Seitz the legal title to the property was still in the former, and many authorities are cited to prove this. As a general proposition it is undoubtedly true, that a stranger can not lawfully demand or receive the consignment; but here appellant recognized and dealt with Seitz as the owner of the property; there is no dispute about his ownership, and this appellant knew. It did not refuse to deliver the property to him because the shipping bill had not been assigned to him, but for the sole reason that the excess of freight was unpaid. Had appellant desired to put its refusal upon the ground that the shipping bill was not present, it should have done so; but it did not, and therefore waived it. Kendal also was asking and demanding that the property be delivered to Seitz, and he claimed no interest in it. The instructions of the court were in harmony with the views we have already expressed, and there was no prejudicial error in them.

The court, over the objection of appellant, admitted in evidence a memorandum, made by appellee, of a general description and value of the property. This paper contained the valuation of $1,210.06, and both Seitz and Kendal, while testifying as witnesses, referred to the memorandum, and stated the value of the goods was twelve hundred and ten dollars. Whether they expressed this as their own individual opinions, or whether they merely

quoted from the memorandum, is, from the evidence, uncertain. At any rate their statements are in exact accord, and from that circumstance it is almost certain their testimony upon that point was but a repetition of the valuation contained upon the paper they then examined. To render their statements competent as evidence, they should be able to give the value of the property independently of the memorandum. It is said by counsel for appellant, and admitted by the opposite counsel, that the court, as the jury was retiring, excluded this paper from the evidence, but this is not shown in the abstract. We are of the opinion the memorandum was incompetent evidence to prove the value of the property, and the mere statements of appellee and Kendal, based upon such memorandum, were of no greater probative value than the memorandum itself. If the memorandum was excluded by the court there was no evidence remaining upon which the verdict could stand. Excluding, then, this evidence, there is nothing remaining in the record to support the verdict of $1,237, so far as we have been able to discover. The evidence for appellant upon the value of the property showed it to be quite meager. We are of the opinion the evidence does not support a verdict for the amount that was returned, and that therefore the damages are excessive, and for this reason the judgment of the Circuit Court will be reversed and the cause remanded for a new trial.