ELMER G. PORTER, Appellant, *v.* LEHIGH VALLEY RAILROAD COMPANY, Respondent.

Fourth Department, November 24, 1920.

Carriers — action for damages for failure to divert car of freight en route — freight consigned under uniform bill of lading and straight form of consignment — diversion order given by telephone with direction for order bill of lading — original bill destroyed and order bill delivered before car reached original point — motion for judgment on pleadings — stipulation considered.

The defendant was not liable for damages resulting from its failure to divert a carload of apples *en route* under an interstate shipment where it appears that the original shipment was under a uniform bill of lading and straight form of consignment and that the diversion order, which was telephoned the defendant's agent, required a reconsignment to another person under an order bill of lading, though the defendant's agent attempted such diversion and destroyed the original bill of lading and delivered the order bill to the plaintiff under which the action is brought, for the tariffs and classifications in effect at that time regulating diversion of interstate

shipments consigned under a uniform bill of lading provided that a reconsignment or diversion *en route* could only be made if requested in writing, and the plaintiff was bound by said rules.

*It seems,* that a stipulation that certain constructions may be placed upon certain clauses in the reply may be considered on a motion for judgment on the pleadings.

APPEAL by the plaintiff, Elmer G. Porter, from an order of the Supreme Court, made at the Seneca Special Term and entered in the office of the clerk of the county of Seneca on the 16th day of October, 1919, granting defendant's motion for judgment upon the pleadings, and also from a judgment entered thereon in said clerk's office on the same day.

*George F. Bodine,* for the appellant.

*Brainard & Noble* [*John M. Brainard* of counsel], for the respondent.

HUBBS, J.:

This action was brought by the plaintiff against the defendant railroad company to recover damages growing out of the misdelivery of a carload of apples. The plaintiff's place of business is at Caywood, Seneca county, N. Y. On the 17th day of November, 1915, he ordered a car from the agent of the defendant to be placed at Romulus, N. Y., to be loaded with apples. The car was placed on November seventeenth and during that day was loaded. On the afternoon of that day the plaintiff telephoned to the railroad station agent at Romulus to ship the carload of apples to Bender, Streibig & Co., Cincinnati, O. The station agent sealed the car and made a waybill for the same. The freight on the car amounted to fifty-two dollars and fifty-three cents, which sum the plaintiff paid. This was the lower rate of freight under the tariffs and classifications in effect at that time. The plaintiff had a choice of two rates, one known as the lower rate, which he paid and which is applicable only to a shipment under the uniform bill of lading. The other rate is ten per cent higher and under it the liability of the carrier is the common-law liability. It is not questioned in this case but what the lower rate and the uniform bill of lading applied.

After the car had been sealed and waybilled as directed by

the plaintiff on November seventeenth, the station agent at Romulus made out a shipping order. That he was required to do by the rules and regulations of the defendant. The Carmack Amendment to the Hepburn Bill, amending the Interstate Commerce Act, as amended by the first Cummins Amendment, governing interstate transportation, required him to make out a bill of lading and he made out what is known as the straight form of consignment. (See 34 U. S. Stat. at Large, 593, 595, § 7, amdg. 24 id. 386, § 20, as amd. by 38 id. 1196, 1197, chap. 176.)

The car left Romulus on the evening of November seventeenth, in accordance with the plaintiff's instructions, bound for Cincinnati, at a rate and under a form of shipping bill provided for by the tariffs then in force. It reached Cincinnati on the morning of November twentieth and was immediately delivered to the consignee.

On the eighteenth of November the plaintiff sold the apples *en route* to Cincinnati to the Beariman Fruit Company of Minneapolis and on the eighteenth of November he telephoned to the defendant's station agent at Romulus to divert said car from Cincinnati to Minneapolis, and to reconsign the same to the new destination under an order bill of lading and not under a straight consignment. Said instructions would have effected a change in the routing and destination of the car, in the name of the consignee, and in the form of the bill of lading. The defendant's agent at Romulus attempted a diversion of the shipment and a reconsignment as requested, but was unable to bring about such diversion, and the apples reached the consignee at Cincinnati, were unloaded, and the failure of the agent at Romulus to bring about a diversion of the shipment resulted in a loss to the plaintiff to recover which this action was brought.

The agent of the defendant at Romulus, on the eighteenth day of November, and before ascertaining whether or not a diversion of the shipment could be brought about, made out a new shipping order, also a bill of lading in the form known as an order bill of lading. On the afternoon of the same day he mailed said order bill of lading to the plaintiff and this action is brought upon such order bill of lading, which called for the delivery of the apples to the Beariman Fruit Company at

Minneapolis, it being the plaintiff's contention that it was the contract entered into between the defendant railroad company and himself and that the damages to the plaintiff grew out of the failure of the defendant to deliver the apples at Minneapolis under said order bill of lading.

In my opinion that is the real question in this case — was the order bill of lading the contract between the parties? The defendant contends that it was not. It contends that the contract of shipment was full and complete when the car in question started on its way to Cincinnati in accordance with the directions of the plaintiff by telephone on November seventeenth at the lower rate of freight which was paid by the plaintiff; that the ordering of the car by the plaintiff, the sealing of it by the defendant's agent, the issuing of the way bill and shipping directions, the fixing of the rate of freight at the lower rate and the payment of the same by the plaintiff, brought the shipment within the tariffs and classifications governing interstate shipments whether an actual bill of lading was made out by the defendant's agent or not. It is urged by the defendant that all of those things had been done — the car had been ordered, had been filled, had been shipped, and was on its way — at a rate which carried with it the necessary conclusion that it was shipped under the uniform bill of lading. I think that the contention of the defendant in that regard is correct and that when the plaintiff called up the station agent of the defendant on November eighteenth the shipping contract was closed, and that if he desired to divert the shipment and to have the car reconsigned to another destination he was bound to do it according to the law governing interstate shipments of freight under a uniform bill of lading; that he was presumed to know that law and the tariffs, rules and regulations applicable to the situation, and that this was true without regard to the fact that the agent of the defendant destroyed the first bill of lading and assumed to issue a new one and mail it to the plaintiff, which new bill of lading is the one relied upon in this action. It makes no difference whether the agent adopted that course innocently, through a mistake, or whether it was brought about through collusion and fraud with the shipper. The objects of the tariffs, rules and regulations governing interstate shipments are to make

the rates, privileges and conditions applicable to all shippers exactly the same. At the time of this shipment the tariffs and classifications provided that a reconsignment or diversion *en route* could only be made if requested in writing. (Circular No. 1109, Supplement No. 24, rule 1.) Undoubtedly, if this same arrangement had been made between individuals it might be held that the agent had authority to waive or that the defendant was estopped by his acts, but that rule has no application whatever to interstate shipments and it has been held that the privilege of diverting cars is of value to the shipper and that to permit one shipper to divert cars without complying with all of the rules and regulations would be a discrimination against other shippers who were compelled to comply with such rules and regulations, and the courts have been very strict in holding that any agreement, act or conduct which attempts to alter the provisions established by the published rules is a violation of the Interstate Commerce Act and that any such agreement in violation of the act does not afford a basis for a recovery against a railroad company. (*Southern Railway* v. *Prescott*, 240 U. S. 632, 638; 60 Law. Ed. 836, 839.)

If I am right in the conclusion which I have reached, it is unnecessary to discuss the other points raised, as the trial justice was correct in the conclusion which he reached although he based it upon a different proposition. It has been urged by the appellant that at the time the plaintiff talked with the agent on November eighteenth, and asked that the car be sent to Minneapolis, he did not know that the car had left Romulus station. This is not in accordance with the pleadings, from which it appears that the instruction to the defendant's agent on November eighteenth was to divert a car that had already been shipped and to reconsign it. That leads to the question of whether or not the stipulation should have been considered by the Special Term or can be considered here. I think that the stipulation should be considered. It is nothing more or less than an amendment or amplification of the pleadings by consent. It has been held that on a motion for judgment on the pleadings a court should take into consideration not only the pleadings but a bill of particulars. (*Wood* v. *Miller*, 78 Misc. Rep. 377; *Dineen* v. *May*, 149 App. Div. 469.) The stipulation is not a stipulation of facts;

it is a stipulation that certain constructions may be placed upon certain clauses in the reply. It points out what the parties to the stipulation understood the words referred to to mean. It was made to clear up certain allegations of the reply so that there would be a written record of what the parties claimed was meant by such allegations.

I advise that the judgment appealed from be affirmed, with costs.

All concur.

Judgment and order affirmed, with costs.