YAZOO & M. V. R. Co. v. NORMAN.

[88 South. 174, No. 20996.]

CARRIERS.  *Initial carrier's liability ends on delivery to interstate point
designated in its bill of lading.*

When the initial carrier issues the bill of lading, by the terms of
which it undertakes to deliver the interstate shipment at a
certain place, its contract is performed when it delivers the
shipment in good order at the designated place, and it is not
liable, under the Carmack Amendment (U. S. Comp. St., sections
8604-a, 8604aa), for damage to the shipment while it is being
transported by another railroad company to some other point
under a bill of lading issued by the other company to the owner
of the property.

APPEAL from circuit court of Copiah county.

Action by R. S. Norman against the Yazoo & Mississippi
Valley Railroad Company.   Judgment for plaintiff, and
defendant appeals.   Reversed, and action dismissed.

*F. M. West,* for appellant.

The rights and liabilities of shippers and carriers re-
specting property shipped by freight from one state to an-
other are to be governed exclusively by Federal Laws.
*M. K. & T. R. R. Co.* v. *Harriman,* 227 U. S. 657, 57 Law
Ed. 690;  *A. T. & S. F. R. R. Co.* v. *Robinson,* 233 U. S.
173, 58 Law Ed. 901;  *A. T. & S. F. R. R. Co.* v. *Moore,* 233
U. S. 182, 58 Law Ed. 906;  *G. F. & A. R. R. Co.* v. *Blish*

*Milling Co.,* 241 U. S. 190, 60 Law Ed. 948; *C. N. O. & T. P. R. R. Co.* v. *Rankin,* 241 U. S. 319, 60 Law Ed. 1022; *So. Ry. Co.* v. *North State Cot. Co.,* 64 So. (Miss.) 965; *Jones* v. *Express Co.,* 61 So. (Miss.) 165; *I. C. R. R. Co.* v. *Davis,* 72 So. (Miss.) 874.

Many other authorities could be cited, but the above suffice. The validity and interpretation of the contract for the interstate shipment of property must be determined under the laws of the United States, and the decisions of the Federal courts thereunder. *McElwain* v. *St. L. & S. F. R. R. Co.,* 176 Mo. App. 379, 158 S. W. 464; *Smith* v. *St. L. S. W. R. R. Co.,* 186 Mo. App. 401, 171 S. W. 635; *Kent* v. *C. B. & Q. R. R. Co.,* 189 Mo. App. 424, 176 S. W. 1105; *Washington Horse Ex.* v. *L. & N. R. R. Co.,* 87 S. E. (N. C.) 841; *United Lead Co.* v. *Lehigh Val. R. R. Co.,* 141 N. Y. Supp. 310; *Davenport* v. *C. & O. R. R. Co.,* 149 N. Y. Supp. 865; *C. R. I. & P. Ry.* v. *Whaley,* 177 S. W. (Tex.) 453; *Hovey* v. *Tankersly,* 177 S. W. (Tex.) 153; *I. C. R. R. Co.* v. *Davis, supra.* Additional authorities are available, but the above are sufficient.

The federal laws, and the decisions of the supreme court of the United States construing them, afford an exclusive rule for determining controversies in state courts pertaining to interstate shipments. *Amer. Silver Mfg. Co.* v. *Wabash R. Co.,* 174 Mo. App. 184, 156 S. W. 830; *Collins* v. *D. & G. R. R. Co.,* 181 Mo. App. 213, 167 S. W. 1178; *Hamilton* v. *C. & A. R. R. Co.,* 177 Mo. App. 145, 164 S. W. 248; *Johnson* v. *M. P. R. R. Co.,* 187 S. W. (Mo.) 282; *So. Ry. Co.* v. *North State Ct. Co.,* 64 So. (Miss.) 965; *Jones* v. *Express Co.,* 61 So. (Miss.) 165; *I. C. R. R. Co.* v. *Rogers & Hurdle,* 116 Miss. 99; *I. C. R. R. Co.* v. *Davis, supra.* Further citations are unnecessary.

*Robt. B. Mayes* and *Clayton D. Potter,* for appellee.

Our contention is that the shipment was a through shipment within the meaning of the federal statute. That is the sole question in this case, and not an authority cited

by counsel for appellant contravenes this contention as we will undertake to convince the court when we analyze their authorities. We want first to present our case on our authorities, before answering the other authorities of counsel for appellant.

In Volume 1, Moore on Carriers, section 24, page 242, the rule is laid down that the owner or shipper of goods may change their destination, and substitute a different place of delivery at any time before final destination is reached and the carriers obligation is not fulfilled until the place of final destination is reached and the goods placed for delivery. This was not done when this diversion order was given. Counsel for appellant present a very ingenious argument to the court, and we compliment them for their skill and resourcefulness in trying to find a defense to this case in the Federal statutes by straining what is manifestly the true intent of the statute and its clear defiinition when it uses the words "transported on a through bill of lading."

It does not mean that at the time the bill of lading is issued that it must contain the final destination of the shipment for if it did it would destroy much of the benefit to be derived from the Federal law in allowing suits against the initial carriers, and would revolutionize the well known and relied upon custom of railroads to allow diversion en route. This is not only a custom, but it is a legal right, and of course the Federal statutes follow and preserve every legal right the shippers had before its passage. Without the right to divert, the perishable food industry is destroyed. Now what does the Federal statute mean when it says the initial carrier may be sued for damages to goods injured when transported on a through bill of lading? In looking for a definition we must resort to railroad methods to some extent for aiding us to understand the meaning of the statute.

In the case of *Hill* v. *Wadley,* 128 Georgia 713, the Georgia court has given us a definition of what is meant by a through shipment. It says: "Freight is designated as

local or through. As the terms are ordinarily employed, a shipment between points on the same line of road is local freight; through freight is that which comes to a railroad company from some other road, or which starts at some point on one line, but in order to reach its destination is turned over to a connecting carrier. It requires the service of two or more railways." This is an accurate and clear definition of what is meant in the Federal statute by a through bill of lading. "It is any bill of lading carrying the goods over a connecting carrier's line, when the shipment is an interstate shipment." The Federal statute preserves all the rights that the shipper had before its passage, and adds more to it.

The case of *Baltimore & Ohio R. R. Co.* v. *Montgomery,* 90 S. E. 740, is a case directly in point and we think decides this case. In the above case a carload of peaches was delivered to the Baltimore & Ohio R. R. at Moorefield, West Virginia, consigned to Richmond, Virginia. This car was delivered by the Baltimore & Ohio R. R. Co. to the Richmond, Fredericksburg & Potomac Railroad Company, and by them carried to Richmond where the contents of the car was inspected by the consignees and found to be in good condition. On the same date this car was delivered to the Atlantic Coast Line, and reshipped to Atlanta, Georgia, upon the original bill of lading issued by the Baltimore & Ohio Railroad Company. The bill of lading issued by the Baltimore & Ohio Railroad Company was the only bill of lading issued during the transit of the shipment. The court said: "The Federal Interstate Commerce Act, as amended, expressly provides that the initial carrier shall be liable for any loss or damage caused by it or any common carrier to which such property may be delivered, or over whose lines such property may pass, etc.

"When the defendant, the initial carrier, issued the bill of lading it was with the knowledge that the law gave the right to change the destination, and with the knowledge that the law put upon it, the initial carrier, the burden

of paying for damages to the shipment, if any was sustained, whether the damage was caused by the defendant or a connecting carrier. The destination was changed from Richmond to Atlanta by the consignees. The shipment was carried from the point of origin—Moorefield, West Virginia—to Atlanta, Georgia, under the contract, the bill of lading issued by the defendant company, and the shipment moved under a through rate of freight from the point of origin to Atlanta, the final destination, as appears from the freight bill. If the defendant, or its connection, had delivered the shipment at Richmond, demanded a surrender of its bill of lading, then collected the freight charges due it, and thereafter a new bill of lading had been issued for the shipment from Richmond to Atlanta, then there would have been a new shipment and the railroad issuing the second bill of lading to Richmond would have been the initial carrier of the shipment from Richmond to Atlanta." See, also, the case of *Myers* v. *Norfolk & Southern R. R. Co.*, 88 S. E. 149.

The bill of lading in this case reads over all the roads, the initial roads and all connecting roads. In the Parker-Bell Lumber Company case, in the new bill of lading, no road names appeared except the new lines. The shipment was made from Kankakee to Palisades Park. It was in truth a new shipment and as the name of the initial carrier did not appear in this new contract, it could not be sued as such because it was not an initial carrier in this shipment. The two cases are widely different. The same distinction exists in the case of *Fred Henderson & Walters* v. *A. C. L. R. Co.*, 76 So. 305.

In both of the above cases the contract of shipment had been fulfilled. It was complete. In the case at bar no new bill of lading was issued at any time. An exchange bill of lading was issued, but each time it carried the name of the initial carrier in the face of it, and but one freight bill was used to collect the entire freight for all the roads, and only a through rate was charged. Counsel for appellant contend that this was a new bill of lading. The facts

do not warrant this contention. It was not a new bill of lading, or a new shipment, as was the case in the two above cases. "New" means, according to the most approved definition, original, independent of, something not heretofore used or discovered. "Exchange" means something to take the place of, not new, and the later bills of lading were mere exchange bills of lading, carrying all that went before and adding a little more. When the court refers to the bills of lading attached to the record it will see that all are made on the same form and that conditions upon each are the same. They are all marked as follows, viz.: "Standard form of straight bill of lading, approved by the interstate commerce commission by order No. 787 of June 27, 1908."

No matter which of the roads dealt with this property, the form and conditions on the back are identical. When an exchange bill of lading was issued it had stamped on the face of it: "This bill of lading issued in exchange for bill of lading issued at Hazelhurst, Mississippi, on the 29th day of June, 1917, by the I. C. Railroad." In the place designated in the exchange bill of lading for the route appears the only two routes used, to-wit: "I. C. & Pennsylvania Lines."

When the goods arrived, the full freight for the entire trip was collected on the same freight bill. While we illustrate by one car diverted, all were the same. Manifestly this was a through shipment within the Federal Act.

Just here it might be well for us to analyze the authorities cited by counsel to show that they are not in point on the question involved. On page 19 of Counsel's brief he cites the following cases: *A. C. L. R. R. Company* v. *Rivedside Mills,* 55 L. Ed. (U. S.) 167; *N. P. R. R. Company* v. *Wall,* 60 L. Ed. (U. S.) 905; *Adams Express Company* v. *Croinger,* 57 L. Ed. (U. S.) 314; *K. C. S. R. R. Company* v. *Carl,* 57 L. Ed. (U. S.) 683; *G. F. & A. R. Co.* v. *Blish Milling Co.,* 60 L. Ed. (U. S.) 948; *St. L., I. M. & S. R. Co.* v. *Starbird,* 51 L. Ed. (U. S.) 917; *M. L. & T. R. R. Co.* v. *Ward,* 61 L. Ed. (U. S.) 1213; *T. & P. R. Co.*

v. *Leatherwood,* 63 L. Ed. (U. S.) 620; 17 U. S. Adv. Ops., page 620. Not one of these cases bear upon any question involved here. We will take up each case.

In the case of the *A. C. L. R. R. Co.* v. *Riverside Mills,* 55 L. Ed. 167, the main question involved was as to the constitutionality of the act of Congress making the initial carrier liable to suit for damages occurring beyond its own line. The court will find the question in the case stated on page 170. The question was simply this: The A. C. L. R. R. Company, ignoring the act of Congress making the initial carrier liable for damages occurring on a connecting carrier, placed in its bill of lading a condition that "no carrier shall be liable for loss or damages not occurring on its portion of the route." This stipulation was in the face of the Federal statute, and when sued as initial carriers the railroad undertook to defend under that clause, contending that the statute was unconstitutional because it deprived the carrier of the right to make a just and reasonable contract; and because in casting primary liability upon the initial carrier, it deprived it of its property without due process of law. The court sustained the statute. This is all that the above first cited case determined. No question was involved such as the one found in this case. However, as throwing light on the purpose of this statute and the liability to be indulged in its construction, the court quoted with approval a speech made by Judge RICHARDSON, a Congressman from Alabama, at the time the bill was passed and stating its purpose. The quotation is as follows: "One of the great complaints of the railroads has been—and I think a reasonably just and fair complaint—that when a man made a shipment, say, from Washington, for instance, to San Francisco, California, and his shipment was lost in some way, the citizen had to go thousands of miles, probably, to institute a suit. The result was that he had to settle his damage at what he could get. What have we done? We have made the initial carrier, the carrier that takes and receives the shipment, responsible for the loss of the article in the way of

damages. We save the shipper from going to California or some distant place to institute the suit."

The above shows the purpose of the statute and a broad effect should be given the statute. Why should we be sent to Pennsylvania to litigate this case? For above quotation see 55 L. Ed. 180.

The next case cited by counsel on page 19 is the case of *N. P. R. R. Co.* v. *Wall,* 60 L. Ed. 905. Not a question decided in the case just named appertains in any way to the questions involved in the case now on trial. The above case only dealt with whether a notice of damage given by the shipper to the connecting carrier was a sufficient compliance with the stipulation in a bill of lading issued by the initial carrier requiring notice of damage to be given to the initial carrier's officers or station agents, and the court held that it was sufficient. The whole case deals with what is a sufficient compliance with a requirement that notice of damage shall be given. On what point in this case does counsel for appellant claim that the last case named has any bearing?

The next case cited by counsel is the *Croninger Case,* 57 L. Ed. 314. This case is absolutely without merit as authority here.

The next case is the case of *K. C. S. R. R. Company* v. *Carl,* 57 L. Ed. 683. All that this case holds is that a connecting carrier may have the benefit of any and all lawful limitations that the initial carrier may place in the bill of lading.

The court pointedly states the two questions involved on page 951. The court says there are only two questions presented: 1st. Is the plaintiff's exclusive remedy against the initial carrier? 2nd. Is the case barred by failure to follow out the provision in reference to filing notice of claim for loss or damage?

How are we helped in solving the questions in this case by anything said in the *Milling Company case, supra.*

The next case relied upon is the case of *St. L., I. M. & S. R. R. Company* v. *Starbird,* 61 L. Ed. 917. Let us see if

that case is helpful?  An examination of the case shows
that the sole question involved was as to the validity of a
stipulation in a bill of lading to the effect that in
the shipment of a carload of peaches, a claim for damages
must be reported to the terminal carrier in writing thirty-
six hours after delivery.  The court upheld the stipula-
tion.  How does this help in this case?

The next case relied upon is the case of the *M. K. & T.
R. R. Co.* v. *Ward,* 61 L. Ed. 1213.  What is this case?
The facts of this case show that Ward delivered to the
Houston & Texas a car of cattle consigned to Winona,
Oklahoma, over its own line and that of two connecting
carriers.  The Houston Company issued its bill of lading
in the form of a live stock contract in common use.  The
first of the connecting carriers on receiving the cattle, is-
sued a new bill of lading and ignored the original one.
The court says in its opinion that the record is silent as
to the circumstances under which the second bill of lad-
ing was executed.  The stock was damaged and Ward
brought suit against all the carriers involved.  Separate
defenses were interposed predicate on the different bills
of lading, and the court merely held that the terms of the
original bill of lading governed the entire transportation.
That is all the last case holds.  How does that conflict with
our contention?  The exchange bill of lading in the case
on trial is identical with the original in all of its terms
and there is no contention that it is not.

Now the next case is the case of *I. & P. R. R. Company*
v. *Leatherwood,* 63 L. Ed. 620; U. S. Adv. Op., Volume
17, page 620.  What is this case?  It merely holds that
connecting carriers cannot be prevented by estoppel from
relying upon provisions in the bill of lading issued by the
initial carrier in conformity to the Interstate Commerce
Act.

In all the authorities so far cited by counsel not one
touches upon any point involved in this case.

COOK, J., delivered the opinion of the court.

Omitting all nonessentials, this record shows that on June 9, 1917, the appellant railroad company issued its bill of lading and delivered it to the appellee, R. S. Norman. By the terms of this bill of lading the appellee contracted to carry a certain carload of green tomatoes to Effingham, Ill. The record shows that the carload of tomatoes were carried safely to Effingham. In other words, the contract made by the Yazoo & Mississippi Valley Railroad Company was faithfully performed. Other bills of lading were issued by other railroad companies to the appellee at its request, and with these bills of lading we have no concern for the manifest reason that the appellant had nothing to do with same.

The briefs in this case have taken a wide range, and in our opinion, while they are interesting, much has been said about cases not made by the record. It goes without saying that the statutes of the United States and the interpretation of same by the courts of the United States are controlling. The simple and only question presented by the record is, Did the appellant comply with its contract. There is no conflict in the evidence upon that point. The appellant did carry the shipment to the destination named in the contract, and did deliver the same to connecting carriers selected by the appellee. The appellant was responsible for the shipment from Utica, Miss., to Effingham, Ill., and no further. The appellee made contract? with other carriers to deliver the shipment to points further east in the state of Pennsylvania, and the damage claimed in this action occurred while the tomatoes were in the possession of agencies selected by him.

The defendant below was entitled to a peremptory instruction directing the jury to find for the defendant.

*Reversed and dismissed.*