OSCAR H. WILLSON, Appellant, Respondent, *v.* AMERICAN RAILWAY EXPRESS COMPANY, Respondent, Appellant.

Fourth Department, December 22, 1922.

Carriers — carriers of goods — action for conversion — car of goods reconsigned after reaching destination though consignor directed it to be diverted — original destination not on direct route from point of shipment to final destination — under rules and tariffs filed with Interstate Commerce Commission through rate did not apply — carrier required, under Interstate Commerce Act, to collect short rate fixed by tariffs filed — agent of carrier has no power to agree to divert shipment after arrival at destination and forward at through rate — act of agent in reconsigning car and not diverting it and demand for payment for short rate was not conversion — consignor liable for short rate.

Under the rules and tariffs filed by the defendant carrier with the Interstate Commerce Commission a through rate does not apply on a reconsignment of a carload, after reaching its point of destination, where the original destination is not on the direct route from the point of shipment to the point of final destination.

Under said rules and tariffs a car cannot be diverted after it has reached its point of destination but must be reconsigned.

A carrier is compelled by the Interstate Commerce Act to collect the legal rate fixed in the tariff and rules filed with the Interstate Commerce Commission which would be, in this case, the short rate.

Accordingly, an agent of the carrier has no power to agree to divert a shipment after it has reached its point of destination and forward it at the through rate and such an agreement, if made, is absolutely void and the consignor will be required to pay the short rate fixed by the tariffs.

The act of an agent of a carrier in reconsigning a car after it had reached its point
of destination and not diverting it as requested by the consignor, and the demand
by the carrier for the payment of the short rate, do not amount to the conversion
of the goods.

DAVIS, J., dissents, with opinion.

APPEAL by the defendant, the American Railway Express Com-
pany, from a judgment of the County Court of the county of
Niagara, entered in the office of the clerk of said county on the 17th
day of January, 1921, modifying a judgment of the City Court
of the City of Lockport in favor of the plaintiff by reducing the
amount of the damages and affirming the same as modified.

Appeal by the plaintiff, Oscar H. Willson, from so much of said
judgment of the County Court as modifies the judgment of the
City Court.

*Judson & Holley* [*George D. Judson* of counsel], for the plaintiff.

*Locke, Babcock, Spratt & Hollister* [*Carlton A. Fisher* and *Noel
S. Syoms* of counsel], for the defendant.

HUBBS, J.:

The defendant is a common carrier engaged in interstate com-
merce. On July 18, 1919, the plaintiff delivered to it a carload
of cantaloupes, at Horatio, Ark., to be carried and delivered to
Kivits Brothers at Terre Haute, Ind., under the provisions of the
uniform express receipt, the express charges to be paid by the
consignee. The car arrived at Terre Haute on the morning of July
twenty-first and the consignees requested the defendant to place
it on their track. On July twenty-second the plaintiff received a
telegram from Kivits Brothers saying that they could not accept
the cantaloupes. The plaintiff then asked the defendant's agent
at Horatio, Ark., if the car could be diverted from Terre Haute to
the Butner Produce Company, at Lexington, Ky., and was informed
that it could be and that the charges would be about the same as
from Horatio direct to Lexington. The plaintiff gave the agent a
written order to divert the car and the agent telegraphed the agent
at Terre Haute to divert the car to Lexington. Instead of diverting
it, the agent at Terre Haute reconsigned it to the Butner Produce
Company, at Lexington, Ky. The car arrived there on July twenty-
fifth, at which time the defendant demanded from the consignee
the sum of $817.33, express and icing charges. The consignee
refused to pay that amount and accept the car. The cantaloupes
were sold by the defendant for the sum of $206.61.

The plaintiff has recovered a judgment against the defendant for
damages, on the ground that the defendant converted the car of
cantaloupes. If the car had been diverted from Terre Haute to

Lexington, the charges would have been between $200 and $300 less. If it had been diverted it would have taken the through rate; as it was reconsigned, it took the short rate from Horatio to Terre Haute and from Terre Haute to Lexington.

There is no dispute but what the plaintiff ordered the car diverted and that the local agent at Horatio telegraphed the agent at Terre Haute to divert it.

The defense is based upon the ground that the car could not be diverted under the tariff rates and rules approved by the Interstate Commerce Commission and in force at that time, and that any agreement to divert the car in violation of the rates and rules on file with said Commission was void and not binding upon the defendant. It is conceded that the rate charged for the shipment must be the rate on file. It is also conceded that such rate made the amount due at Lexington the amount demanded of the consignee.

Rule No. 26 of the official express classification issued by the defendant and filed with the Interstate Commerce Commission governs the rate to be charged where there is a reconsignment of a carload of express. It reads as follows:

" 26. *Reconsignments:* Carloads. If the destination of a carload shipment is changed within 48 hours after the car reaches the original destination, and the contents of the car have not been disturbed or removed and the original destination is a directly intermediate point on a direct route between point of origin and final destination, charges will be assessed on the basis of the through rate from point of origin to final destination. If the original destination is not an intermediate point on the direct route from point of origin to final destination, the through charge must be assessed on the basis of the sum of the local rates to and from the original destination. Owner will be required to pay cost of telegraph and telephone messages ordering change of destination made under this rule."

This rule provides for a reshipment after a car has reached its original destination, in this case Terre Haute. It is conceded that Terre Haute is not on the direct route from Horatio to Lexington. Rule No. 25 provides for the diversion of a car while in transit, and has no application to the shipment in question as here the car had reached its destination before the plaintiff requested the local agent to divert it.

Under the provisions of the Interstate Commerce Act the defendant was bound to collect the rate fixed by the tariffs and rules filed with the Interstate Commerce Commission. (8 U. S. Comp. Stat. §§ 8564, 8565, 8569; 24 U. S. Stat. at Large, 379,

§ 2; Id. 380, § 3; Id. 380, § 6, as amd. by 34 id. 586, § 2, and 36 id. 548, § 9.)* The only legal rate was the one printed in the tariff and rules filed. That rate was fixed and unchangeable by any acts of the parties — it could not be deviated from. The plaintiff and the defendant were each charged with knowledge of it. The defendant could not estop itself from collecting such rate by any statement made by its local agent. It was beyond the power of the agent to bind the defendant to any rate other than that fixed by the tariffs and rules filed. That must necessarily be so, or the purpose of the statute could be easily avoided. (*Atchison, etc., R. Co.* v. *Robinson,* 233 U. S. 173; 58 L. ed. 901; *Pennsylvania R. R. Co.* v. *Titus,* 216 N. Y. 17; *Porter* v. *Lehigh Valley R. R. Co.,* 194 App. Div. 139.) I do not understand the respondent to question these well-settled principles.

It is urged, however, that the shipper would not have ordered the car forwarded from Terre Haute to Lexington if he had not relied upon the statement of the defendant's agent that it would be forwarded at the through rate; also that the plaintiff's instructions were to divert the car and not to reconsign it, and that when the agent violated the instructions and reconsigned it he acted, not only without instructions to do so, but directly opposite to the instructions which the plaintiff gave; and that such act and the demand of the consignee at Lexington for the payment of the short rate which was charged in violation of the agreement constituted a conversion and made the defendant liable for the value of the cantaloupes.

It is clearly settled that if the local agent quotes a certain rate and the shipper relies upon such rate, and sells the goods on that basis, nevertheless, the carrier must collect the tariff rate, although higher, and the shipper has no redress. The shipper is conclusively presumed to know the rate. (*Louisville & Nashville R. R.* v. *Maxwell,* 237 U. S. 94; 59 L. ed. 853; *Texas & Pacific Railway* v. *Mugg,* 202 U. S. 242; 50 L. ed. 1011.) If the local agent had quoted a rate below the tariff rate for the shipment from Terre Haute to Lexington, clearly the defendant would have been entitled to collect the tariff rate. The same rule should apply where the agent, as in this case, agreed to divert the shipment, thereby securing a through rate, where the rules on file only permitted a reconsignment at a short rate. The same reason applies to one case as to the other.

When the agent undertook to divert the shipment he attempted

---

* See, also, 41 U. S. Stat. at Large, 479, §§ 404, 405, and Id. 483, §§ 409–413 (Transportation Act, 1920), since amdg. Interstate Commerce Act, §§ 2, 3, 6.— [Rep.

to secure for the shipper an unlawful rate, a rate below the rate fixed by the tariffs and rules on file. It makes no difference that it was called a diverted shipment instead of a reconsignment; the result attempted to be accomplished, the giving of a lower rate, was the same.

The amount demanded of the consignee at Lexington was the proper amount under the tariffs filed. There was no conversion of the property by the defendant. The judgment for the plaintiff was erroneously granted and should be reversed, the complaint dismissed and judgment entered for the defendant upon its counterclaim for $817.33, less $206.61, the amount received by the defendant on the sale of the cantaloupes, with interest from July 25, 1919, with costs in the City Court of Lockport. The judgment of the County Court should be reversed, with costs to the appellant in that court and with costs in this court.

All concur, except DAVIS, J., who dissents in an opinion.

DAVIS, J. (dissenting):

I cannot agree in the result reached by a majority of the court, although I do not disagree with some of the principles stated in the prevailing opinion.

In connection with the schedules showing rates and charges for transportation which a carrier is required by statute to file with the Commission, it may also make and file any rules or regulations which in anywise would change, affect or determine any part or the aggregate of such rates and charges. (8 U. S. Comp. Stat. § 8569; 24 U. S. Stat. at Large, 380, § 6, as amd. by 34 id. 586, § 2, and 36 id. 548, § 9.)* Evidently the appellant did prepare and file such rules, although I cannot discover in the record where they were offered in evidence. Copies of two rules are attached to the record, and it may be that we could take judicial notice of them as public records, even if not formally received in evidence on the trial.

In the prevailing opinion rule 26 relative to reconsignments is set forth in full. Rule 25, so far as it may be applicable to this case, is as follows: " 25. Change of Destination in Transit: (a) When the destination of a shipment in transit is changed to a point beyond the original destination, or to an intermediate point through which the shipment has not passed, charges must be assessed as the through rate from point of origin to final destination."

The plaintiff had shipped a car of melons from Horatio to Terre Haute. There the consignee refused to accept it. It appears that the shipper had no actual knowledge of the rules of the company,

---

* See, also, Transportation Act, 1920 (41 U. S. Stat. at Large, 483), §§ 409–413, since amdg. Interstate Commerce Act, § 6.— [REP.

but apparently he knew that cars might be diverted from the original destination to a point beyond and obtain a through rate. He consulted the route agent of the carrier, who, after examining the schedules and rules, advised him that the shipment could be diverted and have the advantage of the through rate. The plaintiff then gave to the agent a written order as follows: " Divert Illinois Central 4570 cantaloupes now Kivitts Bros. Terre Haute Ind to Butner Prod Co Lexington Ky. O. H. Willson."

That order constituted the only authority the carrier had for shipping the car. The word " divert " had a definite meaning to both parties at the time the order was given. It acquired that meaning because the route agent had examined the carrier's schedules and rules and interpreted them for the shipper. There was no authority to make a reconsignment of the car, involving greatly increased charges.

It seems to me that the rules are somewhat contradictory and ambiguous. Which should be applied may depend upon a determination of when a car has reached its " original destination." While the car had reached Terre Haute, it had not been accepted by the shipper, and may still have been legally regarded as in course of shipment and not at its original destination in the hands of the consignee. At any rate, the carrier had as much knowledge of the facts as the shipper, and the rules were of its own making. I think the carrier was bound by its own interpretation and the practical construction made of the rules for the benefit of the prospective shipper. It has been held that it may do so by the words of its agent or by a general course of conduct. (*Chicago, R. I. & P. R. R. Co.* v. *Dodson & Williams*, 25 Okla. 822; *West Construction Co.* v. *Seaboard Airline R. R. Co.*, 141 Tenn. 342; 210 S. W. Rep. 633.) In *Lakewood Engineering Co.* v. *New York Central R. R. Co.* (259 Fed. Rep. 61), where under the facts in that particular case there was held to be no practical construction binding on the carrier, Judge DENISON says: " We have no occasion to deny that there may be cases of ambiguity where a general or universal course of conduct may support one or the other construction."

Where a carrier has published conflicting rates, the shipper is entitled to the lower rate, and the carrier to which the goods were transferred is not justified in holding them upon the refusal of the consignee to pay the higher rate. (*Dreyfuss* v. *Pennsylvania R. R. Co.*, 90 Misc. Rep. 581.) In construing a statute the practical interpretation given to it by the administrative body charged with its enforcement is entitled to weight. (*Boston & Maine Railroad* v. *Hooker*, 233 U. S. 97.)

At common law a carrier could make no unjust discrimination

between shippers, and the Interstate Commerce Act has forbidden such discrimination. There is no unjust discrimination where one shipper is as much entitled to the benefit of the interpretation or practical construction of the rules as another. (*Klink* v. *Chicago, R. I. & P. Ry. Co.*, 219 Fed. Rep. 457.) An interstate common carrier is free to exercise all its rights under the common law to the full extent to which such exercise has not been made unlawful by the Interstate Commerce Act. That act does not prohibit the giving of preferences and advantages. It prohibits only those that are undue and unreasonable. (*Union Pacific R. Co.* v. *Updike Grain Co.*, 178 Fed. Rep. 223; affd., 222 U. S. 215.)

There is nothing essentially unlawful in permitting shippers from Horatio, Ark., to ship to Terre Haute, and there divert the shipment to Lexington, Ky., at a through rate, instead of charging them the sum of the local rates, where the rules on file with the Interstate Commerce Commission as interpreted by the carrier who made them permit it. Even if these rules did not apply to shipments from other towns, they would not necessarily be discriminatory and illegal. (*Interstate Commerce Commission* v. *Detroit, etc., R. Co.*, 167 U. S. 633.)

Independent of any question of the applicability of the statute and rules, I think this case may be decided on the plain principles governing ordinary contracts. The shipper had his choice between retaining his shipment at Terre Haute and disposing of it there at the best advantage, or of sending it to Lexington in the hope of finding a more favorable market. As already stated, he sought information of the person best calculated to furnish it, the route agent of the carrier. Then an agreement was made that the shipment should be diverted under the defendant's rules at a specified rate. Relying on that agreement the plaintiff redelivered his shipment to the carrier. No notice was given him that such agreement would not be fulfilled. The carrier had no other authority to take the shipment, except that given in writing, the terms of which it then understood. It delivered the car at Lexington and demanded a charge for two local rates instead of the through rate it had agreed to accept, making the total charge for freight nearly $200 in excess of the value of the property shipped.

This is not a case where a shipper delivers goods for shipment and the agent states the wrong rate in making out the bill of lading, and the mistake in the rate is mutual because both have equal knowledge what the legal tariff is. We have here an agreement which is lawful if the agent has properly interpreted the rules, and unlawful only if his interpretation is entirely unjustified

and amounts to a discrimination. The plaintiff was not required at his peril to know what interpretation might be put upon those rules. He had the right if given proper information, or if informed that the interpretation was doubtful, to withhold his shipment. The defendant had no right to seize his goods and ship them whether he wanted them shipped or not and then insist upon collecting a charge of which the plaintiff had no knowledge.

Where the carrier accepts freight to be delivered to a consignee, agreeing to collect the freight from the latter, the consignor still remains liable for the transportation charge if the carrier does not collect from the consignee. But that does not deprive the shipper of his right to an independent action for damages for the failure of the carrier to perform its contract and collect of the consignee, if damages naturally follow, or to interpose such claim for damages as a counterclaim against the freight charges in an action brought by the carrier. It involves no violation of the Interstate Commerce Act, but rests upon the principles of contract. (*Wells Fargo & Co.* v. *Cuneo*, 241 Fed. Rep. 727, 730; *Yazoo & M. V. R. Co.* v. *Zemurray,* 238 id. 789; *New York Central R. R. Co.* v. *Federal Sugar R. Co.,* 201 App. Div. 467, 475.)

If the defendant found it could not legally perform the contract it had made, it was its duty to notify the plaintiff and await his further instruction. It had no authority to make a new contract for him. It assumed responsibility of shipping his goods in a manner not authorized by him, and refused to deliver to him or his consignee the goods in its possession except upon the payment of an excessive rate of which he had never been informed. The shipper could have no knowledge of such rate, except by interpreting for himself contradictory rules which had already been interpreted for him by the carrier that made them. Under these circumstances the carrier converted his goods and liability should follow. This liability the carrier may not escape under the claim that the rate it first offered to the plaintiff and he accepted was in violation of the Interstate Commerce Act. (*Pond-Decker Lumber Co.* v. *Spencer,* 86 Fed. Rep. 846; *Illinois Central R. R. Co.* v. *Seitz,* 105 Ill. App. 89; 214 Ill. 350; *St. Louis & San Francisco R. R. Co.* v. *Cash Grain Co.,* 161 Ala. 332.)

I favor affirmance of the judgment.

Judgments of County Court and City Court of Lockport reversed, complaint dismissed and judgment directed for defendant upon the counterclaim for $817.33, less $206.61, with interest from July 25, 1919, with costs in all courts to the defendant.