CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.*

ROBINSON & COMPANY.

Opinion delivered January 27, 1930.

912

*Thos. S. Buzbee, H. T. Harrison, Geo. B. Pugh* and *Hays, Priddy, Rorex & Madole* and *Hill, Fitzhugh & Brizzolara,* for appellants.

*D. H. Howell,* for appellees.

HART, C. J., (after stating the facts). It is earnestly insisted by counsel for appellant, Central Railway Company, that the judgment against it should be reversed, and the cause of action as to it dismissed. In this contention we think counsel are correct. The shipment of potatoes was an interstate one, and the Central Railway of Arkansas was the initial carrier. It issued a bill-of-lading to plaintiffs for the two cars of sweet potatoes consigned from Plainview, a station on its line, to shipper's order at Kansas City, Missouri. Thirty-five hours after the potatoes reached their destination at Kansas City, plaintiffs applied for and received a reconsignment or diversion order from the agent of the Rock Island Railway Company at Dardanelle; but the Central Railway

Company did not have any knowledge of the reconsignment or the diversion order issued by the Rock Island Railway Company. Shipment was made and bill-of-lading issued by the Central Railway of Arkansas, on the 12th day of December, 1925; and, the shipment being an interstate one, the case is ruled by the provisions of the Carmack amendment and the decisions of the Supreme Court of the United States construing it.

The rights of the parties in the present case accrued before the Carmack amendment to the Interstate Commerce act was amended by the Cummins act in 1926.

In *Gulf, Colorado & Sante Fe Ry. Co.* v. *Texas Packing Co.*, 244 U. S. 31, 37 S. Ct. 487, it was held that, by request of the shipper and by action of the carriers in dealing with the freight accordingly, a shipment governed by the Carmack amendment and bills-of-lading thereunder might be diverted from the original destination, and the original bills-of-lading be continued in force as applicable to the new destination. There, however, the poultry which was the subject of the shipment was sold while it was in transit to Chicago, and, while the cars were in St. Louis on the side track, the shipper called upon the agent of the initial carrier to divert the shipment to Chicago. It promised to do so, and its agent told the shipper that he would wire a representative of the railway company in St. Louis to divert the cars. No new bills-of-lading were issued, and the shipper was told that the carrier would make proper notification on the original bills-of-lading. Hence the court said that it was fairly inferable from this evidence that the bill-of-lading originally issued was continued in force by action of the parties changing the destination and remained a binding contract when the initial carrier accepted the diversion of the shipment from St. Louis to Chicago. Here the initial carrier did not accept the diversion or reconsignment of the shipment of sweet potatoes from Kansas City, Missouri, to Ogden, Utah. The initial carrier was not consulted in the matter, and did not know anything about the diversion or re-

consignment of the sweet potatoes until sometime after it had been made. The purpose of the Carmack amendment was to create in the initial carrier unity of responsibility for transportation to destination. For the purpose of fixing the liability, the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become, in effect, mere agents, whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier. *Missouri, Kansas & Texas Ry. Co.* v. *Ward,* 244 U. S. 383, 37 S. Ct. 617.

The initial carrier's liability arises out of its own bill-of-lading; and, while the connecting carriers are the agents of the initial carrier, they do not continue to be so when the transportation has been completed and the shipment reaches its destination. There is nothing in the law as to interstate shipments which would justify the holding that the Rock Island Railway, as connecting carrier, was the agent of the Central Railway Company, as initial carrier, in the making of a new and different contract of transportation, after the original contract had been performed. So far as we are advised or have been informed, at the time the contract of shipment was made there was nothing in the tariff or rules of the Interstate Commerce Commission which required the initial carrier to divert the shipment after it had reached its destination; and certainly, if it could not have been required to divert the shipment, a diversion or reconsignment by one of the connecting carriers would not create a new or binding obligation on it. *Southern Produce Co.* v. *Norfolk Southern Rd. Co.,* (Supreme Court of Appeals of Virginia) 144 Va. 422, 132 S. E. 360; *Clark* v. *Louisville & Nashville Rd. Co.,* 216 Ala. 637, 114 So. 295; *Wilson* v. *American Railway Express Co.,* 204 App. Div. 59, 197 N. Y. Supp. 600; affirmed in 239 N. Y. 562, 147 N. E. 196; *Rice* v. *Oregon Short Line Co.,* 33 Idaho 565, 198 Pac. 161; *Yazoo & M. V. R. Co.* v. *Norman,* 125 Miss. 636, 88 So. 174; and *Barrett* v. *Northern Pacific R. Co.,* 29 Idaho

139, 157 Pac. 1016. See also Roberts' Federal Liabilities of Carriers, (2d ed.) vol. 1, § 389.

While the statutes of the United States and the construction of the same by the Supreme Court of the United States are conclusive, we think it is clear from the authorities cited above that, when the shipment in question was made, appellant, Central Railway Company, was only required to carry the shipment of sweet potatoes to the destination named in the contract, and, on their arrival there, could not be required to divert the cars of sweet potatoes to another point, and that it was not bound by a new contract reconsigning them to a point made by one of its connecting carriers without its knowledge or consent.

Upon the question of damages against the Central Railway Company, but little need be said. The evidence of the employees of the initial carrier shows that the two cars of sweet potatoes were properly loaded, and were in good condition when received by the initial carrier. The evidence of the conductor of the train, on which they were carried from Plainview to Ola, shows that there was no delay or negligence in handling the train or in delivering the potatoes at Ola to the Rock Island, as a connecting carrier. The evidence of the employees of the initial and connecting carriers shows that the potatoes were carried from Ola to Kansas City, Missouri, without delay, and without any negligence in the handling of the train in which they were carried. They were carried promptly and were placed on the side-track at Kansas City, subject to the shipper's order. They were allowed to remain there thirty-five hours before the shipper attempted to divert or to reconsign them. There is no evidence in the record tending to show that there was any damage to them thus far. The testimony of the operatives of the train as to how the train was handled, and as to there being any delay in the carriage to the point of destination, was reasonable in itself. It was not contradicted in any respect, and no attempt was made to

contradict it by either evidence of facts or circumstances which would tend to show that it was untrue. Hence the case seems to have been fully developed as to the Central Railway Company, and the judgment will be reversed, and the cause of action as to it will be dismissed here.

The appeal of the Rock Island Railway Company stands on a different footing. When it made the contract of diversion or reconsignment of the two cars of potatoes from Kansas City, Missouri, after their arrival there, to Ogden, Utah, this was tantamount to a new contract by it, and it became liable, as initial carrier, from Kansas City, Missouri, to the point of destination. The diversion of the two cars of potatoes from Ogden, Utah, to points farther west was made two days before the shipment arrived at Ogden. Hence, the transportation under the new bill-of-lading or reconsignment by the Rock Island had not been completed before the diversion at Ogden was requested by the shipper. This request for a diversion, from Ogden to points further west was made by telegram, and, having been made before the cars of sweet potatoes reached their destination at Ogden in written form, and having been accepted and the cars diverted by the Union Pacific, the Rock Island, the initial carrier, under its new contract, would be liable for all damages accruing by the negligence of any connecting carrier until the cars of sweet potatoes reached their final destination.

In its motion for a new trial, the Rock Island Railway Company claims that the court erred in not directing a verdict in its favor. For the reasons above given, the court did not err in this respect. By the issuance of a new bill-of-lading which reconsigned the two cars of potatoes from Kansas City, Missouri, to Ogden, Utah, the Rock Island became the initial carrier, and became liable as such. The diversion having been requested before the two cars of sweet potatoes arrived at Ogden, the shipper had a right to have them diverted to other points upon the payment of the proper tariff rate.

The only other ground assigned as error in the motion for a new trial by the Rock Island Railway Company

is to the form of verdict returned against it, and in this contention we think it is correct. The verdict of the jury found for the plaintiffs against both the defendants for damages caused while the shipment was on the Rock Island Railroad in the sum of $760. As we have already seen, under the testimony of the trainmen there was no damage done to the potatoes while they were being carried on the line of the Rock Island Railway Company. According to the evidence of the trainmen, the train was handled carefully, and there was no delay in the shipment. The ventilators on the cars were kept in such condition as was required by the weather. Hence there was no evidence upon which to base a verdict for damages against the Rock Island caused while the shipment was being carried over its own line. The judgment against it will be reversed, and the cause will be remanded for a new trial.

It follows that the judgment as to the Central Railway Company is reversed, and the cause of action is dismissed, and the judgment against the Rock Island Railroad Company is reversed, and the cause of action is remanded for a new trial. It is so ordered.